EUGENE F. AVERILL v. MARY R. WOOD, ADMINISTRA-
TRIX, ETC.

*Fraudulent representations—Promissory note—Qualified indorsement
—Ignorance of import—Release of right of action—Con-
sideration—Signature obtained by fraud—Pleading
—Declaration—Evidence—Charge to jury.*

1. An arrangement by the receiver of a corporation to pay its out-
standing note in lumber amounts to an acceptance of the note
to the common understanding.

2. To hold that a man cannot be defrauded by false representa-
tions because he is presumed to know the law, which pre-
sumption is a violent one in most cases, is to place the igno-
rant and foolish, who are generally the victims of fraud, beyond
the protection of the law. *Hess v. Culver*, 77 Mich. 598 (head-
notes 1 and 3).

So *held*, where a plaintiff claimed to have been defrauded in
the purchase of the note of an insolvent corporation by repre-
sentations that its receiver had arranged to pay the note in
lumber, which arrangement it was claimed the receiver had no
power to make, for which reason the plaintiff had no right to
to rely thereon.

3. Where, in a suit for damages for alleged fraudulent representa-
tions by which plaintiff was induced to purchase a note, the
jury find that the fraud was committed as claimed, evidence
that the defendant said he would guarantee that the note
would be paid is admissible as a part of the transaction, if the
jury find that such promise was made to aid in the fraud per-
petrated on the plaintiff.

4. The law approves of settlements and compromises of disputed
claims, and, when deliberately made, the parties are bound by
them, and the law will not sanction any interference with them,

without the consent of the parties, except upon the ground of fraud or mistake.

5. The purchase of property of a wife, at the request of her husband, upon the condition that the husband would sign a release of all of his claims against the vendee, is a sufficient consideration for such release.

6. Where, in such a case, the husband was induced to execute such release by fraudulent representations that it was not binding, and would not be used against him, and his wife receives the entire benefits of the transaction, the husband is not estopped from repudiating the release for fraud because of the non-return of such benefits by the wife.

Error to Kent. (Grove, J.) Argued October 25, 1889. Decided December 28, 1889.

Case. Defendant brings error. Affirmed. The facts are stated in the opinion.

*Taggart, Wolcott & Ganson,* for appellant, contended:

1. Fraud must be clearly proved; citing *Powers v. O'Brien,* 44 Mich. 317; *Campau v. Lafferty,* 50 Id. 114; *Brown v. Dean,* 52 Id. 267; and the facts constituting the fraud must be proved as set forth; citing *Collins v. Jackson,* 54 Mich. 186.

2. A receiver has no power to make contracts without the authority of a court, and all persons contracting with him are chargeable with knowledge of his functions and powers; citing High, Receivers (2d ed.), § 186.

3. Even though the question of fraud in the release was open on the trial below, the statement claimed to have been made by Donaldson, that this paper was not good because of lack of consideration, would at most be only an expression of a legal opinion, and, he not occupying any position of trust towards plaintiff, no charge of fraud could be based upon it; citing Cooley, Torts, 484, and cases cited; *Upton v. Tribilcock,* 91 U. S. 45; *Starr v. Bennett,* 5 Hill, 303; *People v. Supervisors,* 27 Cal. 656; *Clem v. Railroad Co.,* 9 Ind. 488; *Townsend v. Cowles,* 31 Ala. 428; *Steamboat Belfast v. Boon,* 41 Id. 50.

4. Plaintiff is estopped from retaining the benefits of the settlement, and at the same time avoiding it on the alleged ground of irregularity and fraud; citing *Craig v. Bradley,* 26 Mich. 354; *Dunks v. Fuller,* 32 Id. 242; *Crippen v. Hope,* 38 Id. 344; *Lumber Co. v. Gustin,* 54 Id. 631.

*Ward & Ward,* for plaintiff, contended for the doctrine stated in the opinion.

MORSE, J.  The plaintiff alleges that on November 18, 1887, he was induced to take of Isaac W. Wood, in payment of real estate sold to said Wood, two certain promissory notes, as follows:

" $500.00.          GRAND RAPIDS, MICH., Dec. 22, 1885.
"Three months after date, for value received, the Newaygo Manufacturing Co. promise to pay to the order of Isaac W. Wood five hundred and no-100 dollars, at Old National Bank, Grand Rapids.
"No. 258.          NEWAYGO MANUFACTURING CO.,
                        "By A. J. DANIELS, Vice Prest.
" Countersigned by G. H. HOBART, Treas."

Upon the back of said note are the following indorsements:

"Rec'd by bill rend. June 2, '86, two hundred fifteen and 17-100 dollars.
"Rec'd by statement rendered Nov. 14, '87, seventy-eight and 83-100 dollars.
" Pay Eugene F. Averill without recourse.
                              "ISAAC W. WOOD."
" $600.00.          SPARTA, MICH., Nov. 16, 1881.
"Forty-five days after date I promise to pay to the order of Isaac W. Wood six·hundred and no-100 dollars, at the First National Bank, Grand Rapids, value received, with interest at eight per cent. per annum.
"No. —.  Due Jany. 3d.          E. BRADFORD."

Upon the back of said last note was the following indorsement:

"Pay Eugene F. Averill without recourse.
                              "ISAAC W. WOOD."

That the said Wood then and there falsely and fraudulently represented and warranted that the note signed by Bradford was good and collectible for its face value, and interest from its date, and that there was due about $900 upon it, and that Bradford was pecuniarily responsible

for the amount of said note, and would pay the same to plaintiff; and also falsely and fraudulently represented that the other note was good and collectible for its face value, with interest, less the amount of the indorsements thereon, payable in lumber by the receiver of said Newaygo Manufacturing Company; and that he had an arrangement with said receiver by which the note should be paid in lumber when called for, which arrangement the receiver would carry out; and that said company had, since the appointment of said receiver, paid in lumber, to apply on said note, the sum of $78.83, which payment Wood indorsed on the back of said note at the time of the transfer to plaintiff; that he took these notes for the sum of $1,128; confiding in and relying upon such representations, and deeded his real estate to said Wood; whereas, in truth and in fact, such representations were untrue, alleging their falsity in detail, by means of which premises the said Wood falsely and fraudulently deceived him, and thereby the plaintiff has lost, not only the value of the consideration paid for the notes, but also $200, in a fruitless attempt to collect them.

Defendant pleaded the general issue. Wood died after the trial in the court below, and his administratrix has been substituted as defendant. The plaintiff had verdict and judgment in the Kent circuit court for $1,212.11.

It appears from the testimony of both plaintiff and Wood that their dealings first commenced in a trade between Wood's father, for whom he acted, and plaintiff about November 1, 1887. At this time plaintiff owned a block on West Bridge street, which he valued at $6,000, incumbered to the extent of $2,900. Abijah Wood, father of Isaac W., owned property on Livingston street, which, plaintiff claims, defendant valued at $4,500. This was incumbered by a mortgage of $2,500. Also property on Clinton street, which defendant, as plaintiff claims,

valued at $1,500, upon which. was a mortgage of $500.
The parties traded even, each assuming the incumbrances
upon the property received by him.   The plaintiff testi-
fied that defendant told him that the mortgage of $2,500,
which was then past due, and held by one Waters, could
run as long as he wanted it to.   On November 9, 1887,
the defendant procured an assignment of this mortgage
to himself, as he claims, at the request of plaintiff.

The testimony of the plaintiff tended to show that
soon after this defendant came to him and asked him what
he would take for the property received by plaintiff from
Abijah Wood in the trade above referred to.   After some
negotiations the sum of $1,400 was agreed upon as the
price to be paid plaintiff.   The defendant thereupon
offered him the notes above given and $200 in cash for
the property. · Represented to him that nothing had been
paid on the Bradford note; that the amount due thereon
for principal and interest was the sum of $900; that Mr.
Bradford, the maker, was in business at Sparta, and was
perfectly responsible; that the reason nothing had been
paid on the note was that Bradford was good; and repre-
sented in regard to the Newaygo Manufacturing Compa-
ny's note that the receiver had accepted the note, and
had agreed to pay it in lumber, and had already made
part payment thereof in that way, and that there was
then due upon that note about $300; that these repre-
sentations were all false; that the Bradford note had been
all paid long before, excepting $100; that Bradford was
not in business in Sparta, but had failed long before,
and was wholly irresponsible financially; that the Newaygo
Manufacturing Company's receiver had not accepted that
company's note, nor agreed to pay it, nor paid any part
of it, in lumber; that he believed these alleged represen-
tations to be true, and parted with his property in reliance
upon them, and would not otherwise have done so; that

he has attempted to collect the notes, and has wholly failed, and that they are wholly uncollectible; that defendant had knowledge of such attempts and failure, and for a long time afterwards recognized and acknowledged his continued liability to the plaintiff to make good to him the amount for which he took the notes; that both notes were wholly worthless because of the insolvency of the makers; that he did not know until the next day after he took the notes that the defendant had indorsed them, "Without recourse," and that when he discovered that fact he did not know the significance or effect of such indorsement.

The defendant testified that he made none of the representations claimed by plaintiff; that no price or sum was agreed upon for the property; that defendant was besought to buy the property by plaintiff, who was unable to pay the interest on the $2,500 mortgage. Defendant urged plaintiff to improve the property, and finally offered to assume the mortgages, and give him $200. Plaintiff asked him if he had not some notes he would give him,—

"Some notes you don't consider worth much. I shouldn't wonder if I could handle them."

Defendant then said to him that $200 was all the property was worth to save a foreclosure, and showed him the notes. Nothing was done at this time. Afterwards defendant went to see plaintiff about the payment of the interest, and then plaintiff wanted to see the notes. Plaintiff took a memorandum of them. Defendant told him that the $2,500 mortgage might lie, but he must have the interest. Plaintiff stated that he wanted to look up the notes, and the interview ended. About a week afterwards the plaintiff met defendant, and said·

"Wood, I will deed you the property; you give me the $200, and give me the notes."

Defendant testified that he did not make much reply, because · he did not really like to deal with him; but plaintiff seemed to think it was all right, and, as he started off, said he would make out the deed. That on the next morning, November 19, 1887, he came to defendant's home, with the deed executed, and the sale was made. That plaintiff knew that the notes were indorsed without recourse at the time the indorsement was made, and understood its import, and that it was expressly understood between them that defendant incurred no liability upon said notes in any event, and that plaintiff subsequently acknowledged that he had no claim against him on account of these notes.

He further gave testimony tending to show a full settlement of all the matters between them, including these notes. He testified that in April, 1888, the plaintiff desired him to purchase a building belonging to plaintiff's wife, and situated on land leased by plaintiff. That defendant had some talk with plaintiff's wife, and, on April 21, 1888, he bought the building, a store; that plaintiff told him the property was really his, but he did not want his creditors to get hold of it. He would not buy the store, · or take the lease, until the plaintiff executed to him a full release of all demands against him, as he had heard that plaintiff was claiming that defendant owed him. He paid the plaintiff $225 in cash, and gave Mrs. Averill a bill of sale of flour and produce in payment. He introduced in evidence the assignment of the lease, containing also the release:

"GRAND RAPIDS, MICH., April 21, 1888.

"For a valuable consideration, I, Eugene F. Averill, of the city of Grand Rapids, Michigan, hereby transfer, sell, and set over unto Isaac W. Wood, of the same place, all my right, title, and interest in and to the annexed lease, made and executed by Reuben H. Smith to me, of the land and premises therein described, dated the 18th day of September, 1886.

"And it is hereby expressly stipulated and agreed by the said Eugene F. Averill that there is nothing whatever due him from the said Isaac W. Wood by virtue of any past deal or transaction, whatsoever, and hereby states that no claim or demand of any amount is due, or has been due or claimed by him, the said Averill, against the said Isaac W. Wood, by virtue of the purchase by said Averill of a certain note of $600 executed by E. Bradford, and hereby represents and states that no liability exists, or ever existed, thereon, the said Bradford note, against said Wood, or will exist against him, said Wood.

"E. F. AVERILL."

At the same time he gave back to plaintiff, at his request, who dictated it, the following document:

"GRAND RAPIDS, MICH., April 21, 1888.

"I hereby agree that Eugene F. Averill is in no way or manner indebted to me, and that I will not commence suit or cause to be commenced on any claim or demand growing out of the sale or assignment to him of the E. Bradford note, so far as any claim is concerned for the recovery of money, or any other note sold to said Averill in the past in good faith.

"ISAAC W. WOOD.

"FRANK S. DONALDSON, Attorney."

Donaldson corroborates defendant as to this settlement, and the facts attending it. Donaldson swears that Averill was fully acquainted with the nature and contents of the document he was signing, and that Donaldson expressly informed him that if he signed it he could never expect to collect anything of Wood on account of these notes; that plaintiff said he did not claim that Wood was owing him anything on account of the notes, but still he did not want to sign it, and did not do so until it was read over to him several times, and fully explained to him. Then he wanted a receipt from Wood, and dictated it while Donaldson wrote it. Then he insisted upon the latter signing it as a witness, and underneath Wood's name.

Plaintiff claimed in rebuttal that his signature to the release was procured by fraud. He testified that Donaldson said that there was no value received, and no consideration in regard to the release; and it was of no importance if he did sign it; that he told Wood that it was not right for him to sign it, and that he knew he owed him the sum called for by these notes. Wood said he knew that, but he wanted no trouble over the matter.

"The note shall never come to suit. If you will sign that paper I will make a satisfactory settlement with you."

Wood and Donaldson both told him that the paper,—the release,—was of no importance; that it was not binding at all; and that it was merely to satisfy Wood that plaintiff's wife might not claim the notes as hers, by assignment, or otherwise, from plaintiff, and for fear she would garnishee Wood, or refuse to give up possession of the building until they were paid. Plaintiff also testified that he meant the other paper to be a guaranty that Wood—

"Would not commence suit against me in regard to this note. That he would pay this money all nicely, and we would never have any trouble about the matter, and we would settle up."

That plaintiff wanted a paper—

"To show that I would not have to bring a suit against him; that was the idea; that he would settle it without my fetching any suit against him; that was the idea."

It is evident from the record that plaintiff is a very ignorant man as regards business matters, and it was the theory of his counsel that he was easily fooled and duped by Wood, a sharp business man. Wood and Donaldson deny making any such statements to plaintiff, or that any fraud was committed upon him. Plaintiff testifies that his wife made the bargain for the sale of the store

property with Wood, and that he had nothing to do with it except to assign over the lease, which was worthless without the building, which was personal property, and resting on stilts upon the premises. That the property belonged to his wife, and he had no interest in it. That the money and property received of Wood all went to his wife. The bill of sale was made in her name, and the money paid to him he handed over to her. That after this transaction Wood agreed to settle with him for the notes. In this he is corroborated by another witness.

There are 28 assignments of error, all of which are relied upon. We shall notice those we deem worthy of discussion.

It is alleged that the court erred in permitting plaintiff to testify that Wood told him that the receiver of the Newaygo Manufacturing Company had accepted the note, because there is no allegation to this effect in the declaration. The declaration averred that Wood represented that he had made an arrangement with such receiver to pay the note in lumber. Such an arrangement, we think, would be a virtual acceptance of the note to the common understanding.

The defendant's counsel also objected to the giving of this arrangement in evidence, for the reason that there was no allegation in the declaration that Wood's contract with the receiver was transferred, or to be transferred, to plaintiff. No such allegation was necessary. Also, for the further reason that the receiver had no power to make any such arrangement with Wood, and, as the plaintiff must be presumed to know the law, he could not have placed any reliance upon such statement. The plaintiff was not debarred from relying upon Wood's statement that this arrangement existed because of any lack of authority under the law in the receiver to make it. To hold that a man cannot be defrauded by false

representations because he is presumed to know the law, which presumption is a violent one in most cases, would be to place the ignorant and foolish, the persons who are generally the victims of fraud, beyond the protection of the law. It was also proper for the plaintiff to state that he relied upon these representations in taking these notes.

In detailing the conversation between himself and Wood at the time the alleged representations were made, plaintiff was permitted to state, against objection, that Wood said he would guarantee that the notes would be paid, or that he would see that they were paid. This is assigned as error. The testimony was admissible as a part of the transaction, and its admission did not prejudice defendant except in a lawful way. No claim was made upon the trial for any recovery by reason of this guaranty. The court instructed the jury in reference to it that these promises to guarantee the payment of the notes would not support this action, which was for fraud, and that the testimony of such promises could not be considered at all in the case unless the jury found that the alleged fraudulent representations were made, and that the promises were made to aid in the fraud. This was correct. If there was no fraud, the case against defendant was ended. If the jury found that the fraud was committed as alleged by plaintiff, they had the right to all that was said and done by the parties at the time the notes were transferred.

Error is assigned upon a remark of the circuit judge during the trial. No exception was made at the time, and it does not appear that the attention of the court was ever challenged to it. Nor do we think the remark was prejudicial to defendant. The trial court was speaking in relation to the claim of defendant that parol proof could not be introduced that Wood would see the note

paid when the note itself was indorsed by Wood, "without recourse," which was his written contract, and in effect relieved him of all legal responsibility, or that it could not be shown what Wood said when he was making the indorsements on the company note. The court said:

" The agreements these parties were making were in reference to the sale of real estate, and the defendant's representations of warranty related to the consideration that the defendant was to pay for this real estate, a note, turning out that note which, it is claimed, he represented to be good and collectible, and indorsed in this particular way. Now, the question is whether that excludes the testimony of parol representations alleged to have been false, and the warranty of the collectibility or validity of the note, and the other representations. Now, if he had indorsed that note in the ordinary way he would have been liable for the full amount."

Defendant's counsel remarks:

" Liable in *assumpsit* for the indorsement."

The court says:

" Instead of indorsing it in that way, he indorsed it in such a way as to render him not liable upon it, and induces the parties to take it upon representations that of itself it is collectible without his indorsement. What is the rule that precludes them from relying on the representations of warranty? What proof do I understand, Mr. Ward, that you intend to make in that connection?"

Plaintiff's counsel answered that he intended to show what Wood said when he was making indorsements upon the note of payments he had received from the receiver of the Newaygo Company, and not anything in reference to the indorsement, "without recourse," which plaintiff did not know he made until afterwards.

The court evidently misunderstood the objection of defendant's counsel, and was supposing the case whether,

78 MICH.—23.

if defendant did indorse the note, "without recourse," and induced the party to take it upon representations that it was good without his indorsement, such representations could be proved. He did not intend to state that the defendant did induce the plaintiff to so take it, and we cannot infer that the jury so understood it.

The charge of the court to the jury was remarkably clear and fair, and we can find no fault with it. In relation to the release the court said:

"A paper has been put in evidence on this trial, called a 'release.' It is a written declaration by the plaintiff that at the date thereof, April 21, 1888, there was nothing whatever due to him from the defendant by virtue of any past deal or transaction whatever. The language is plain and intelligible, and its meaning and effect could not be misunderstood by any person of ordinary intelligence, and unless the plaintiff was induced to sign it by the fraud of the defendant, or it was wholly without consideration, it is binding upon the plaintiff, and he cannot recover if he signed the paper deliberately, with full knowledge of its contents, or not under the influence of any mistake. If it was induced by fraud, or was wholly without consideration, then it is not binding. The law approves of settlements and compromises of disputed claims, and, when deliberately made, the parties are bound by them. The law upholds and sustains them, and will not disturb them, or sanction any interference with them, without the consent of the parties to them, except upon the ground of fraud or mistake.

"If you find that the plaintiff desired the defendant to buy the property from Mrs. Averill that was conveyed by the bill of sale which was delivered at the same time as the assignment of the lease containing this release was delivered, and that the defendant would not make that deal unless the plaintiff would sign such a release or declaration, and the plaintiff signed it in order to have that sale of his wife's property consummated, that would be a sufficient consideration for the release, and no promise by the defendant made at the time or subsequently to pay plaintiff, if any such promise was made, can be of any avail to plaintiff in this suit, or relieve him from the

binding effect of the settlement. The consideration for the release need not pass to the plaintiff. It is just as binding upon him if the consideration is paid to his wife, if it was a part of the same transaction. The release can only be avoided in case the defendant and his attorney deceived plaintiff as to its contents and effect, and thereby induced him to sign it."

This instruction was correct, and covered the case in respect to the release.

It is contended that the plaintiff could not retain the consideration money, flour, and other produce received upon the last trade, and repudiate for fraud the release then and there executed by him; that as long as he kept the fruits of the bargain he could not relieve himself of the effect and tenor of the release. But it must be remembered that the plaintiff's theory and testimony was that he had nothing to do with this trade except to assign over a lease which was worthless without the building, and for which he received no consideration; that the store belonged absolutely to his wife, and that she made the trade, and received every cent of the consideration for the same; that he was induced to sign this release by the fraudulent representations that it was not binding, and would not be used against him. If this theory was correct, and his testimony true, he received no benefits from the transaction, and had nothing in his hands or under his control to return to the defendant, and he was therefore not estopped from asserting the fraud upon him.

One cannot read this record without being satisfied that the plaintiff is a man but little versed in business matters, and one who might easily be imposed upon and defrauded. The matter was fairly submitted to the jury, who found in his favor, as we think, justly. We have carefully examined all the errors assigned, and find nothing occurring upon the trial prejudicial to the defendant, except in so far as the law and the testimony militated

against his theory of the transactions between him and the plaintiff.

The judgment is affirmed, with costs.

CHAMPLIN, CAMPBELL, and LONG, JJ., concurred. SHERWOOD, C. J., did not sit.