## LUMLEY v. WABASH R.

### (Circuit Court of Appeals, Sixth Circuit. June 22, 1896.)

### No. 360.

1. ANCILLARY SUIT—JURISDICTION.

 The jurisdiction of the court cannot be questioned in an equity suit filed in aid of a legal action in that court by direction of the court.

2. RELEASE—CANCELLATION FOR FRAUD.

 If the surgeon of defendant railroad company knew that a release of damages by plaintiff, an ignorant man, was being bargained for by both parties upon the basis of his opinion as to the extent and character of the injuries and the probable time that plaintiff would lose from his occupation by reason thereof, it was his duty to give an honest opinion; and his failure to do so is ground for disregarding or canceling the release.

3. CONSTRUCTION OF RELEASE—GENERAL TERMS.

 If both parties supposed that plaintiff had received certain injuries, the extent and character of which were considered and discussed with reference to the time which the injured party would probably lose in consequence thereof, and a release was given, specifically mentioning the particular injuries known and considered as the basis of settlement, general language following will not include a particular injury then unknown to both parties of a character so serious as to clearly indicate that, if it had been known, the release would not have been signed.

4. PARTIAL RELEASE—EFFECT.

 The rule that damages resulting from one and the same cause of action must be sued for and recovered once for all is merely a rule of procedure, and does not prevent a recovery for part of the damages after the giving of a release for the other part.

5. SAME—TENDER OF MONEY RECEIVED.

 One seeking to recover part of the damages accruing from an accident is not bound to return money received by him on account of a release given by him of the other part of the damages. 71 Fed. 21, reversed.

Appeal from the Circuit Court of the United States for the Southern Division of the Eastern District of Michigan.

Bill by Ephraim Lumley against the Wabash Railroad Company. From a decree for defendant (71 Fed. 21), plaintiff appeals.

Appellant's bill was dismissed upon demurrer for want of equity. It contained, in substance, the following statement: That the complainant was a passenger on the Wabash Railway, in charge of a shipment of horses owned by his employer, which were being transported from Ridgetown, in the province of Ontario, to Danville, in Illinois; that while the car in which said horses were was in the yards of the Wabash Railway Company at Detroit, Mich., a collision occurred between said car and a locomotive operated by the servants of the Wabash Railway Company, whereby complainant, who was in the car in discharge of his duties, sustained great and permanent bodily injuries; that this collision occurred on the night of October 3, 1890, and was wholly due to the fault and negligence of the servants of the defendant company; that, notwithstanding his injuries, he pursued his journey; that on the following morning he was attended by a surgeon in the employ of the company, who placed his arms in splints; that on the second morning his car reached its destination,—Danville, Ill.,—where he was taken to the office of the chief surgeon of the said company; that it was found that complainant was suffering from two injuries,—a superficial contusion on the forehead and a fracture of the right arm between the elbow and wrist; that complaint was made of pain in the right shoulder, but that said surgeon made no examination of the parts, assuring complainant that the pain he noticed was due to the broken arm, and was wholly "sympathetic"; that upon a second visit to the office of this surgeon he met one Austin, who represented himself as anxious to settle with complainant for "the fracture of his arm and the contusion" above described; that complainant was asked what his regular wages were; that he replied that he was a carpenter, and earned eight dollars per week; that Austin then asked the said surgeon how long it would be before complainant would be well and able to resume his work; that the surgeon answered "that the contusion was trivial, and that the fracture would be entirely well in about eight weeks"; that said surgeon more than once assured your orator that he would be able to resume his daily occupation "in not to exceed eight weeks at the very outside"; that Austin calculated what orator would earn in eight weeks at $64; that upon a suggestion that his arm might require a readjustment of the splints on his arrival at home, Austin said that he would pay the difference between $65 and $75 "for that purpose," and would pay orator $75 on account of said injuries; that this was accepted; that it was never claimed or pretended that the company was not liable for the injuries sustained in said collision; that a release was drawn up by said Austin, "which he pretended to read, * * * but that he read same with great rapidity; whether he read all of it your orator does not know, but he charges that he did not"; "that all your orator understood him to read was with regard to the receipt of seventy-five dollars, and the expression, 'fracture of the arm';" that no copy of this release was given orator, and that he never afterwards saw it until filed in court in a suit to be mentioned hereafter; that in May or June, 1894, on request of orator's counsel, a copy of same was furnished complainant, when, and for the first time, he became aware that it contained terms which he never understood as the subject of settlement or consideration. The release aforesaid was in these words: "Whereas, on the third day of October, A. D. 1890, I, Ephraim Lumley, of Ridgetown, Ontario, Canada, was a passenger of the Wabash Railroad Company, and as such passenger was engaged in the discharge of my duty in caring for horses loaded in car, said car standing on tracks in R. R. Yard, Detroit, Mich., at time said car, wherein I was, was run against and upon by a locomotive, giving car heavy shock, whereby I was injured, on the Third district, E. Division, of said railroad; and whereas, I, the said Ephraim Lumley, received certain injuries, to wit, severe contused and lacerated wound on forehead, right side, fracture of right arm between wrist and elbow, and various injuries and contusions, both internally and externally, in and on various parts of my body; and whereas, I, the said Ephraim Lumley, believe that my injuries are the direct result of the negligence of said railroad company, its officers, agents, and employés; and whereas, the said railroad company denies any and all negligence on the part of itself, its officers, agents, and employés, and denies any and all lia-

bility for damages for the injuries so as aforesaid by me sustained, but by reason of an offer of compromise, made by me, the said Ephraim Lumley, for the purpose of avoiding litigation, to receive and accept the sum of seventy-five dollars in full accord and satisfaction for all claims for damages which I may or might have, either at common law or by virtue of any legislative enactment of the state of Michigan, for the injuries aforesaid, have paid to me the said sum of seventy-five dollars: Now, therefore, in consideration of the premises, and of the payment to me of the aforesaid sum of seventy-five dollars, the receipt whereof I do hereby acknowledge, remise, quitclaim, and forever discharge the said the Wabash Railroad Company, its leased and operated lines, of and from all actions, suits, claims, reckonings, and demands for, on account of, or arising from injuries so as aforesaid received, and any, every, and all results hereafter flowing therefrom. Witness my hand and seal this sixth day of October, A. D. 1890."

The bill then charges that, so far as said release undertakes or purports to release or discharge said company from liability for any injury except the head contusion and fracture of the arm, and so far as it recites that there was a controversy as to the liability of the company "the same is false and fraudulent, and was imposed upon your orator fraudulently, and without proper reading upon the part of said claim agent; and that orator never intended to execute any such paper, and no such agreement was ever made between the parties." The bill then states in a detailed way that the shoulder trouble increased, and that subsequently it was discovered that the supposed "sympathetic pain" in the shoulder and adjacent parts had an independent origin, the shoulder having been dislocated and fractured; that from these unknown injuries to the shoulder complainant was for a long time confined and suffered much distress, and that from those injuries he is and has been permanently disabled, and is unable to support himself through his avocation; that it was never intended to release said company from liability for any injuries other than those known and discussed at the time; that he trusted entirely to the statement and representation of the said chief surgeon as to the character and extent of his injuries; that he did not read the release prepared for him, and relied entirely upon the good faith and honesty of the servants of the company who prepared it. It charges that if said surgeon knew the fact that he had sustained serious and independent injuries to his shoulder, his representations that the pain in his shoulder was purely sympathetic was an actual fraud; that, on the other hand, if he was ignorant, the language of the release is too broad, in that it purports to cover "various injuries and contusions, both internally and externally, in and on various parts of my body"; that the words quoted were inserted fraudulently, and were no part of the subject-matter of the settlement, and were inserted without the knowledge and intent of the complainant. The bill alleges that in May or June, 1894, a copy of said release was obtained from said company, until which time he was ignorant of its terms; that under advice of counsel he at once tendered a return of the $75, with interest, which was rejected; that in July, 1894, an action was brought in a state court to recover damages for the injuries so sustained; that the defendant company "duly moved" that suit into the circuit court of the United States for the Eastern district of Michigan; that in January, 1895, that case came on for trial; that after the conclusion of the evidence and argument the court made an order allowing plaintiff to withdraw a juror upon condition that he would within 30 days file a bill on the equity side of that court for the purpose of avoiding the release aforesaid; that in compliance with that order this bill is filed, and the money received under said release deposited in the registry of the court. By way of excusing the delay in tendering back said money and in filing a bill to cancel or limit said release, the bill states that complainant, owing to his poverty, was unable sooner either to pay back said money or bring suit; that he did not know that the release he had signed embraced this injury until he obtained a copy in May or June, 1894; that he had a good cause of action for the injury to his said shoulder and parts adjacent for an amount exceeding $2,000; that the defendant had no legal defense against such action, and that it has fraudulently set up said release as a defense to said action. The bill prays the

cancellation of said release as having been obtained through fraud, or that the court will enjoin defendant from pleading said release as a bar to an action for said injuries to complainant's right shoulder and the adjoining parts, or limit the release so that no right of action will be released save that for the contusion to the head and the fractured arm.

Alfred Lucking, for appellant.
Alfred Russell, for appellee.

Before TAFT and LURTON, Circuit Judges, and HAMMOND, J.

After making the foregoing statement, the opinion was delivered by LURTON, Circuit Judge.

The first ground of demurrer questions the sufficiency of the averments of the bill touching the jurisdiction of the court. The averment is that the complainant is "a resident of Ontario and a citizen of the dominion of Canada." It is said that the averment should have been that he was "an alien, and a subject of the queen of Great Britain and Ireland," and that the court is not authorized to infer that he is an alien from the averment of the bill. For this counsel cite Anderson v. Watt, 138 U. S. 694, 702, 11 Sup. Ct. 449, and Stuart v. City of Easton, 156 U. S. 46, 15 Sup. Ct. 268. Without passing upon this question, we think the jurisdiction of the court is clearly to be supported upon the ground that this suit is ancillary to the action at law. Whether the circuit court had jurisdiction in the legal action now pending is not a question which we can review in this dependent and collateral suit. This bill was filed in aid of the legal action, and by direction of the court. We need look no further than the allegations of the bill, which show its collateral character. Compton v. Railroad Co., 31 U. S. App. 529, 15 C. C. A. 397, and 68 Fed. 263.

The remaining grounds of demurrer may be considered together. Collectively, they may be said to challenge the sufficiency of the facts stated to justify a court of equity in preventing the respondent from setting up the release obtained from the complainant as an impediment to the recovery at law of compensation for the injuries he has sustained. It cannot be denied that the terms of the release in question are sufficiently comprehensive to prevent a recovery for any of the injuries which may have been sustained by the complainant as a consequence of the negligent collision of which he complains. The consideration stated in the release is both particular and general. The recital is that Lumley received certain injuries, to wit, "severe contused and lacerated wound on his forehead, right side, fracture of right arm between wrist and elbow, and various injuries and contusions, both internally and externally, in and on various parts of my body." The release is from "all actions, suits, claims, reckonings, and demands for or on account of or arising from injuries so as aforesaid received, and any, every, and all results hereafter flowing therefrom." The gravamen of the bill is that complainant received an injury to his shoulder, by breaking or dislocation, which has permanently disabled him, and reduced him to a state of helplessness; that this injury is not a consequence or result of either the contused wound on his

head or the fracture of his right arm, but was an independent injury, not mentioned or described in the release except as it may be included under the general term "various injuries," "internally and externally in and on various parts of my body." The explicit averment of this bill is that this serious injury was unknown to complainant at the time he gave the release in question, and was not considered as an element for compensation, and, being unknown, his right of action was not intentionally released or discharged. He therefore asks that the release be altogether set aside, or confined to the subjects discussed, known, and considered when the release was granted. To give emphasis to this latter equitable contention, the bill states that attention was called to the fact that his shoulder gave him pain, but that no physical examination was made to ascertain the cause; that when he mentioned this fact, the chief surgeon of the defendant, who was giving him surgical assistance, assured him that the pain was "purely sympathetic," and was attributable to his fractured arm. Thus the matter was dismissed, and a release executed upon the representation of this surgical servant of the defendant that the known and considered injuries would be well within less than eight weeks. It has now turned out that this unknown and unsuspected injury was the principal injury sustained, and has resulted in a permanent and serious bodily disability. If the terms of the release are so broad and comprehensive as to embrace a distinct and independent injury, not known or considered by the parties to the release, it will be most inequitable that it should stand as an impediment to the recovery of just compensation therefor. There are two distinct grounds upon which relief may be rested in such a case:

First. If the existence of this injury was known or suspected by the surgeon of the defendant, it was his duty, under the facts stated in this bill, to have informed Lumley of the trouble. To say to him that the pain of which he complained was sympathetic, and was caused by the fracture below his elbow, was a positive misrepresentation of the truth, and an operative fraud. To say that Lumley ought not to have trusted or relied upon his opinions or representations, knowing that he was in the service of the company against whom he had a claim, is no answer. On the facts stated he knew that a release was being bargained for upon the basis of his opinion as to the extent and character of the injuries complainant had received, and the probable time he would lose from his occupation by reason thereof. He was under strong obligation to give his honest opinion upon a matter of professional knowledge, upon which he had every reason to know this ignorant man was implicitly relying.

Second. But if this surgeon honestly supposed the shoulder pain to be sympathetic, either because his examination had been superficial, or because he had made none, we would then have a case where a release is comprehensive enough to cover a matter or claim unknown to both parties, and was therefore not the subject of consideration. Equity relieves from mistakes as well as frauds. The case is not one where it was sought to compromise and settle a

general claim for all the injuries resulting from a particular accident, known and unknown. If one agrees that he will receive a given amount in satisfaction and settlement of his damages sustained through a particular accident, it is not essential that every possible consequence of the tort shall be mentioned, considered, or enumerated. The subsequent discovery by one giving such a release that he was worse hurt than he had supposed, would not, in and of itself, be ground for setting aside the settlement or limiting the release. We put our judgment upon the facts stated in this bill, to wit, that both parties supposed complainant had received certain injuries, the extent and character of which were considered and discussed with reference to the time which the injured party would probably lose in consequence thereof. In such a case, if a release is given specifically mentioning the particular injuries known and considered as the basis of settlement, general language following will be held not to include a particular injury then unknown to both parties of a character so serious as to clearly indicate that, if it had been known, the release would not have been signed. This jurisdiction is well known, and has frequently been applied in cases of release affecting property rights, both in courts of law and equity.

In Cholmondeley v. Clinton, 2 Mer. 173–352, Sir William Grant, master of the rolls, mentions the case of Farewell v. Coker, decided by Lord King, where a release was executed so general in its terms as to pass a reversion in fee. A bill being filed to set aside this release upon the ground that it was meant only for a particular purpose, Lord King directed an issue to try—First, whether, at the time of the execution of the release, she knew or was apprised of her title under the will to the reversion; secondly, whether she intended by the release to pass that reversion. This decree was affirmed by the house of lords.

In Ramsden v. Hylton, 2 Ves. Sr. 304–309, Lord Hardwicke, in considering whether or not a certain demand was within the terms of a release, said:

"First. It is certain that if a release is given on a particular consideration recited, notwithstanding that the release concludes with general words, yet the law, in order to prevent surprise, will construe it to relate to the particular matter recited, which was under the contemplation of the parties and intended to be released. The particular point in consideration was not relative to this estate, but what they could have against him as representative to his mother, brother, or father's personal estate, to which the words are particularly confined. But there is no occasion to rely on the law for this, for it is clear that it would not in a court of equity, it being admitted on all hands, and it must be so taken, that this settlement was unknown to all the parties. Nor did the daughters know of this contingent provision, beside which they had no other provision out of this estate; and all they could be entitled to must arise out of the personal estate of their father or other relations. It is impossible, then, to imply within the general release that which neither party could have under consideration, and which it is admitted neither side knew of; and, as this release cannot have its effect to bar this demand, so it cannot be set up against them in a court of equity."

In Lyall v. Edwards, 6 Hurl. & N. 336, this principle was applied in the court of exchequer. A release was pleaded to an ac-

tion for conversion of certain goods. To this a release was pleaded in terms broad enough to cover the claim involved. The replication was that at the time of the release the plaintiff did not know that the defendants had committed the grievance in the declaration mentioned, or that plaintiff had any claim or cause of action against the defendants in respect of the goods in the declaration mentioned. Pollock, C. B., said:

"The replication was good. * * * It is a principle long sanctioned in courts of equity that a release cannot apply, or be intended to apply, to circumstances of which a party had no knowledge at the time he executed it, and that, if it is so general in its terms as to include matters never contemplated, the party will be entitled to relief."

See, also, London & S. W. R. Co. v. Blackmore, L. R. 4 H. L. 610–623; 1 Story, Eq. Jur. § 145; and Phillips v. Clagett, 11 Mees. & W. 84.

It may be said that this doctrine that a release cannot apply or be intended to apply to circumstances of which the releasing party had no knowledge at the time of the release has no practical application to damages originating in the same cause of action; that, if this release had been expressly limited to such damages as were recoverable by reason of complainant's fractured arm and contused head, it would nevertheless operate as a bar to an action for the other part of his damages having a common origin in a single tort. The general rule is that damages resulting from one and the same cause of action must be sued for and recovered once for all. But this is a rule of procedure, a rule of which Lord Blackburn, in Colliery Co. v. Mitchell, 11 App. Cas. 138, said:

"I do not think it is one of those rules of law which depend upon natural justice. I think it is an artificial rule of positive law, introduced on the balance of convenience and inconvenience."

As a rule of positive law it has its exceptions. In Roberts v. Railway Co., 1 Fost. & F. 460, the court refused to apply it in a case where the plaintiff's action was for personal injuries sustained in a railway accident, whereby he at the same time lost his hat. For the latter he had settled and given a receipt. This was pleaded as an accord and satisfaction. The plea was overruled, Cockburn, C. J., saying:

"It could not be seriously urged that, if the plaintiff has been seriously injured, he is precluded from recovery because he agreed to accept two pounds for his hat."

This case was cited with approval in Lee v. Railway, L. R. 6 Ch. App. 527–537.

The rule of procedure alluded to has application only where the plaintiff has split up his cause of action, and recovered judgment in one suit for part of his damages, and then brought suit for the other part. This is the real basis for the ruling in Roberts v. Railroad, cited above. In Bliss v. Railroad Co., 160 Mass. 447, 36 N. E. 65, the court, upon mature consideration, held that the rule did not apply in cases where the parties had agreed upon a settlement of a part of the damages and released all right of action for the part so settled, and that such a release could not be pleaded as a bar to a suit for the other part, although that embraced in the settle-

ment and that sued for constituted together but one cause of action. The case referred to is much in point, for the release, though intended to include only a part of the damages, was, in fact, so comprehensive as to include all the damages sustained by the plaintiff. Upon evidence that the release had been procured by fraud, the court confined it to the damage intended to be released, and permitted a recovery for the other part of the damages. The plaintiff had retained the money paid, and it was urged that this operated as a bar, just as the recovery of a judgment for one part of the injury would debar him. To this the court said:

"But there are good reasons for holding the contrary doctrine. If one sues to recover for an injury, he may well be held to include in his action all that he is entitled to sue for in respect to that cause of action. But if one is making a settlement the same reasons do not apply, and if he cannot make a full settlement he may make a partial one, and thus eliminate one element from the controversy."

As to the fact that the plaintiff had not paid back the money he had received, the court said:

"Why should he pay it back, when it represents only the sum agreed on for his compensation for that portion of his loss which he no longer seeks to recover for?"

In this aspect of the case it is a matter of no importance whether the plaintiff paid back or offered to pay back the money he received. He did, in fact, tender it back some three years after he received it. This delay is unimportant, as the statutes of limitation have not barred his suit, and he was entitled to retain it as a satisfaction for the part of his injury he had understandingly settled. If the release had in fact been procured by fraud, he could have shown this at law, the fact that the release was under seal out of the way. Railway Co. v. Harris, 158 U. S. 326, 15 Sup. Ct. 843; Mullen v. Railroad Co., 127 Mass. 86; Phillips v. Clagett, 11 Mees. & W. 83–89; Barker v. Richardson, 1 Younge & J. 361; Averill v. Wood, 78 Mich. 342, 44 N. W. 381; Railroad v. Welch, 52 Ill. 183; Railroad Co. v. Lewis, 109 Ill. 120; Railroad Co. v. Doyle, 18 Kan. 58; Lusted v. Railroad Co., 71 Wis. 391, 36 N. W. 857; Stone v. Railroad Co., 66 Mich. 76, 33 N. W. 24; Dixon v. Railroad Co., 100 N. Y. 170, 3 N. E. 65. Many reputable authorities maintain that where a release is obtained by fraud it is not necessary that the money received be returned at all. That it may be credited upon the recovery is held to be sufficient. This seems to have been regarded as proper practice in Railroad Co. v. Harris, cited above. Railroad Co. v. Doyle, Railroad Co. v. Lewis, and Mullen v. Railroad Co., all cited heretofore, are express authorities upon this point. It is, however, unnecessary to decide this question, and it is, therefore, reserved.

The facts stated in this bill are such as that it should have been entertained, and the demurrers overruled, upon the ground that the case stated was such as that the release would operate as a fraud if the defendant was suffered to rely upon it as an impediment to a recovery of that part of complainant's damage not discussed or considered, and not intended to be released. Reversed and remanded, with direction to overrule the demurrer.