THE SIOUX CITY STOCK YARDS COMPANY, Appellant, v. THE SIOUX CITY PACKING COMPANY.

**Contracts: SUBSTITUTION:** *Privity.* Defendant, being in possession of certain premises under a lease, agreed with plaintiff that, if he would purchase the premises, defendant would continue to occupy them as a packing house a certain length of time, and would buy therefor a certain amount of live stock yearly from plaintiff's stock yards, after which time the premises were to be conveyed to defendant. *Held,* that on purchase by plaintiff the agreement was substituted for the original lease, and, on vacation of the premises by defendant, plaintiff's remedy was action on the contract and not on the lease.

**SAME:** *Executory contracts as substitute.* The fact that a contract intended as a substitution for another was executory, and that defendant refused to perform, does not revive the original agreement.

CONDITIONS PRECEDENT AND SUBSEQUENT.   Agreements in a contract that plaintiff should purchase property held by defendant under a lease, and that defendant should occupy and use the premises for a certain business for a certain time, after which plaintiff would convey to defendant, were conditions subsequent; and failure of defendant to perform did not prevent the contract from taking effect.

New Trial: NEWLY DISCOVERED EVIDENCE.   It was not error to refuse a new trial on the ground of newly discovered evidence, where the witness who is to furnish the alleged new evidence was a witness in the former trial and was fully examined, and where some of the evidence which it is alleged would be given is cumulative, and some, conclusions of law.

*Appeal from Woodbury District Court.*—Hon. F. R. Gay-NOR, Judge.

SATURDAY, JANUARY 27, 1900.

ACTION at law to recover rent reserved in a lease of a packing-house plant in the city of Sioux City, and for an injunction restraining the defendant from removing certain personal property used by it upon the premises. The defendant interposed various defenses, some of which will be referred to in the body of the opinion. The case was tried to a referee, who made a finding of facts, stated his conclusions of law, and recommended a judgment for defendant. To certain of these findings and conclusions, plaintiff objected and excepted, but its objections were overruled by the court, and judgment was entered against plaintiff for one thousand seven hundred and seventy-five dollars and ninety-one cents and costs, and plaintiff appeals.—*Affirmed.*

*Lewis & Beardsley* and *Taylor & Burgess* for appellant.

*Marks & Mould* for appellee.

DEEMER, J.—The defendant filed no objections or exceptions to the report of the referee, and, of course, is concluded thereby on this appeal. The material facts are as follows: From November 15, 1892, until April 27, 1893,

the Union Stock-Yards Company, a corporation organized under the laws of this state, owned and operated a property known as the "Union Stock-Yards Plant," consisting of a system of railway tracks, hog and cattle yards, various franchises, and other valuable improvements and property, in the city of Sioux City. During that time the Booge Packing Company, another corporation, held the legal title to what is known as the "Booge Packing Plant," in the same city; but all the stock of this last named corporation stood in the name of the Union Stock-Yards Company until July 1, 1895, and the packing plant was at all times treated by all parties hereto as a part of the stock-yards plant. On November 15, 1892, the Union Stock-Yards Company made a contract with the defendant, another corporation, to lease it the premises known as the "Booge Packing Plant." Pursuant to this contract, defendant took possession of the plant, and continued to operate it until October 25, 1895. A formal contract of lease was entered into on December 15, 1892, by the terms of which defendant agreed to hold the said premises for the term of ten years from and after the first day of December, 1892, at the yearly rental of six thousand dollars; to buy all stock of every kind that it kills in the house so leased, out of the yards of the lessor, and to perform various other conditions and covenants, not necessary to be here enumerated. On April 20, 1893, in an action brought by one Stetson against the Union Stock-Yards Company, one Chesley was appointed receiver of the company, and as such came into the possession of all the property of the corporation, including the lease heretofore described, and the stock of the Booge Packing Company. The action in which the receiver was appointed was removed to the United States Circuit Court, and there consolidated with another action, wherein a trust company was plaintiff, and the Union Stock-Yards Company was defendant, brought to foreclose a mortgage for six hundred thousand dollars, which covered a large part of the property of the stock-yards

company. In the consolidated action, Chesley was continued as receiver, and his possession of the property was confirmed. On July 14, 1893, the district court made an order authorizing the receiver to enter into a contract with the defendant modifying the lease of December, 1892, to the extent of relieving the defendant from the payment of rent thereunder for the period of five years from and after June 1, 1893, upon certain conditions, one of which was that there should be paid in on the capital stock of the packing company the sum of ninety-five thousand dollars, to be used in carrying on the business of operating the plant. The receiver also agreed to pay defendants for improvements placed upon the premises the sum of six thousand dollars. Pursuant to this modified contract, the receiver paid the sum fixed for improvements. At the time of the execution of the lease of December 16, 1892, the leased premises were incumbered by mortgage in the sum of one hundred and twenty-five thousand dollars to James F. Booge, trustee; and they had also been sold at tax sale, which had not been redeemed from. On October 9, 1893, a decree was entered in the district court of Woodbury county, in an action wherein Booge, as trustee, was plaintiff, and the Booge Packing Company and the defendant herein were defendants, foreclosing the Booge mortgage upon the packing-house plant. Under said decree the leased premises were sold to plaintiff on May 21, 1895, and on June 20, 1896, a sheriff's deed was issued to the plaintiff. The taxes remaining unpaid, the same was sold, and a tax deed was on February 25, 1895, issued to one Elston for the benefit of the plaintiff. On March 29, 1895, and while defendant was still occupying the packing-house plant under the original lease and the modified contract made by the receiver, the plaintiff, that, as we have seen, is a corporation organized some time in the year 1894, entered into a contract with the defendant by the terms of which it was, among other things, agreed that plaintiff should procure title

to the packing-house plant, and convey the same free from incumbrance to the defendant, on condition that the property should revert to the plaintiff in the event the defendant failed to carry out its promises at that time made. Plaintiff was also to deposit in escrow one hundred thousand dollars of its capital stock, to be delivered to defendant upon certain conditions. In consideration of these provisions, defendant agreed to keep the premises in good repair, to pay all taxes and assessments against the same, and to keep the property insured. It also agreed to occupy the premises as a packing-house for ten years from and after January 1, 1895, and to purchase of plaintiff all live stock it slaughtered, and in such amount as to make the yardage charges at least eight thousand dollars per year. It was also agreed that, in the event the defendant refused or became unable to perform its covenants or agreements, all its rights under the contract should cease, and that it should make a reconveyance of the defeasance to plaintiff. This contract also contained the following recitals: "That whereas, the party of the first part is the equitable owner of, or has power to acquire the legal title alike to, the notes and the mortgage securing the same upon the property hereinafter mentioned and described, and commonly known as the 'Booge Packing House,' and also the stock of the company in whose name such plant stands, subject to the mortgage aforesaid, and also a tax title upon said property, purporting to have matured into an indefeasible title to said property; and whereas, by means of the titles and securities as aforesaid, and as soon as a full title to said property, coupled with absolute possession thereof, may be acquired by the said party of the first part, it is its intention, and it hereby agrees, to carry out its contract in respect thereof hereinafter set forth; and whereas, said party of the second part is desirous of acquiring the property above referred to, and hereinafter mentioned, and, by proper description, to be hereinafter incorporated, to be more specifically described, for the purpose of carrying on

upon said premises a packing business: Now, therefore, in consideration of the premises," etc. On May 31, 1895, a decree was entered in the consolidated action to which we have called attention, granting the relief prayed by Stetson, and the receiver was authorized to sell the real and personal property of the Union Stock-Yards Company, subject to a prior mortgage lien, and without redemption. And on July 1, 1895, the receiver sold the property, including the stock of the Booge Packing Company, and the contract of lease and the modified contract, to the plaintiff, and said sale was confirmed by the United States Circuit Court. We have also seen that plaintiff acquired title to the packing plant under the foreclosure proceedings of the Booge mortgage on June 20, 1896. On its part, plaintiff complied with all the terms of the March 29th contract, and, under date of August 24th, 1895, executed a warranty deed of the premises to the defendant; but the deed was never delivered, for the reason that defendant neglected to execute and deliver to plaintiff a contract of defeasance that plaintiff had left with it for execution and return. There is no evidence to show that defendant has done anything or claimed any rights under the contract of March 29th, and plaintiff has at no time given notice that it rescinded or terminated the contract. Neither the original lease nor the modified contract made by the receiver was ever surrendered to the defendant. Nor have the same been expressly canceled, released, or discharged. Defendant paid rent for the use of the premises to June 1, 1893, but has paid no rent since that time.

Some time during the month of October, 1895, defendant shipped all its meat and supplies, except such as had been attached by the plaintiff, out of the state, and on the same day notified plaintiff that it would at once vacate the said premises. And on October 25th plaintiff commenced its action, in which it sought to recover the rent reserved in the original lease of December 16, 1892, and

damages for defendant's failure to comply with the terms and conditions thereof. A writ of attachment was issued, which was levied on certain property of the defendant. The defendant claimed that the original lease was executed without the authority of the board of directors of the Union Stock Yards Company, and that it was procured by false and fraudulent representations; denied that plaintiff was the owner of the original lease, or the modified contract made by the receiver, and claimed that the receiver had no power or authority to sell the said lease to the plaintiff, and that he did not in fact do so; alleged that the United States Circuit Court had no jurisdiction to make an order for the sale of the lease or the modified contract; averred that the premises had been sold under the foreclosure proceedings of the Booge mortgage, and that a tax deed had issued to one Elson, and that the Union Stock-Yards Company became insolvent in the year 1893, and was wholly unable to protect defendant in the possession of the property; that plaintiff never accepted the lease, nor assumed the obligation of lessor towards the defendant; that the premises became out of repair, and unfit for use for the purposes intended; and that defendant was compelled to repair the same at large expense; that through the foreclosure proceedings the Union Stock-Yards Company lost its right to all its property near to and appurtenant to the packing company, in which defendant held certain valuable easements, of which it was deprived by said foreclosure proceedings; that the relation of landlord and tenant never existed between plaintiff and defendant; and that it owes the plaintiff nothing in virtue of any lease. Defendant also avers that it entered into a new and independent contract with plaintiff on March 29, 1895, in relation to the packing-house plant, by the terms of which the rights of all parties with reference to said plant were fully fixed and determined, and that the same is the only contract entered into by the parties to this suit, and the only one by which defendant is in any manner obligated or bound to the plain-

tiff; that plaintiff never acquired any right to or interest
in the original lease, and ought not to be heard to make any
claim thereunder, by reason of the fact that the parties fixed
their mutual rights and obligations in the contract of March
29th; and that plaintiff acquired whatever interest it had
in said packing plant under the contract of March 29th, and
it is estopped from claiming under the original lease.   Prac-
tically all the affirmative allegations of the answer were
denied in a reply filed by plaintiff, and, in addition thereto,
plaintiff pleaded that the contract of March 29th never
became effective, because defendant failed and refused to
comply with the conditions therein contained to be per-
formed by it, which it is claimed were precedent to the valid-
ity of the contract, and that the parties are remanded to their
rights under the original contract of lease; that the modified
contract made by the receiver never became binding, because
defendant failed to comply with a condition therein requiring
it to resume its business and continue in the operation of
the plant as contemplated in the original contract of lease,
and thereby forfeited all rights under the modified contract.
It also averred in the reply that defendant's possession has
never been interfered with by any one, and that it has pro-
cured all outstanding liens, incumbrances, or titles at any
time existing against the property.   On the issues thus
joined, and on some others not necessary to be stated, the
cause was tried by E. J. Stason, Esq., referee, who, after
hearing the evidence, made a finding of facts reciting the
matters heretofore set out, as well as some other things, to
which we may hereafter call attention.   From these facts he
concluded that as plaintiff had not either expressly or by
implication rescinded the contract of March 29th, and as it
had complied with the terms of its contract on its part by
procuring title to the stock-yards plant, including the pack-
ing house, it was estopped from claiming under the original
lease, or from asserting any title thereto, as against the
defendant.   He also found that plaintiff did, as a matter of

fact, purchase the lease and modified contract, but that it did so under the contract of March 29th, and that it could not acquire any interest therein, except under that contract; that defendant was not indebted to plaintiff in any sum whatever for rent, and the issuance and levy of the writ of attachment were wrongful and unauthorized; that defendant was not liable for breach of the covenants of the original lease; that the action should be dismissed, and the writ of attachment dissolved; and that plaintiff should pay over to defendant the amount realized under the attachments. From a judgment pursuant to these findings and conclusions, the appeal is taken.

As we have already seen, defendant took no exceptions to the report of the referee, or to the judgment rendered by the trial court; and counsel, in argument, abandon the claim of want of authority on the part of the officers of the Union Stock-Yards Company to make the original lease, and of fraud in procuring the same. They say little regarding the claim that plaintiff never obtained title to the lease, and their chief reliance seems to be upon these two propositions:  (1) That there is no privity of contract between plaintiff and defendant under the lease of December 16, 1892, and that by the legal proceedings to which we have referred the lease was extinguished, and plaintiff cannot assert title thereto as against the defendant; (2) that the lease of December 16th was entirely superseded by the contract of March 29th, and that the rights of the parties are to be fixed and determined by the latter contract; (3) that, by reason of the facts disclosed in evidence, plaintiff is estopped from claiming any rights under the original lease, or adverse to those created by the contract of March 29, 1895.

Thus presented, the case involves a determination of the question as to the effect of the March 29th contract, viewed in the light of the surrounding facts and circumstances. Had plaintiff been the original lessor, and had nothing been done

save the making of a new contract, by which the lessee was given the right to purchase the property, which it refused to abide by or perform, there would be much reason for holding that, as the new contract was apparently abandoned by the lessee, the rights of the parties should be determined under the original lease, although the parties to a contract may, by agreement between themselves, substitute a new contract in place of the original one, and in such case, if the new contract be not performed by either of the parties, the rights and remedies of the other must be determined by the new contract, and not by the old one. *Merry v. Allen,* 39 Iowa, 235; *Jaffray v. Greenbaum,* 64 Iowa, 492; *Hall v. Smith,* 15 Iowa, 584; *Levi v. Karrick,* 13 Iowa, 344. Whether or not the new agreement was intended as a substitute for, or in satisfaction of, the old, is to be determined from the evidence bearing upon the intent and purpose of the parties, and the new agreement need not expressly state that it was so intended. As said in *Levi v. Karrick, supra,* "The question is one of evidence or contract, and, whether established by necessary implication or from express stipulation, the rule is the same." These rules no doubt apply to a case where the assignor or purchaser of the lease from the lessor makes a new contract with the lessee. But in such case it is often less difficult to arrive at the intention of the parties than where the contract is between the original parties. It is manifest that plaintiff was anxious to have the packing plant operated, and, before taking steps looking to the purchase of the stock-yards plant, it entered into the contract of March 29th. That it did so for the purpose of securing the profits that might arise from the operation of the packing plant is clear. In that contract nothing was said about rent, and it is apparent that both parties understood that their rights were to be determined by the new instrument, and that that contract should be a substitute for the original lease. The original lease, with its modification, gave the defendant the right to use and occupy the premises, but there was nothing in the

original lease which required the defendant to operate the plant. In order to secure that promise, the plaintiff undertook on its part to invest its money, and procure the title to the property. Here was a consideration for the new contract, independent of any of the covenants or conditions of the original lease. That the parties understood it to be a substitute for the original is hardly to be doubted. Defendand could not possibly operate under both the original lease and the March 29th contract. One or the other fixed its rights and obligations. In purchasing the lease, plaintiff did not intend that it should stand in the way of the contract it had made on March 29th. Plaintiff could not collect rent for the premises simply because they had been occupied by the defendant, for its occupancy was manifestly under the permission given in the contract of March 29th. Again, this latter contract prescribed penalties and remedies for its violation, and made no reference to the original lease,— cogent evidence that it was intended as a substitute. Again, in January of the year 1895 plaintiff made a contract with the beneficiaries of the Booge mortgage for the reissuance of bonds on all the property save the packing-house plant, which provided that this reservation was "to the purpose and intent that they (the packing-house plant) may be conveyed to packers upon consideration of undertakings on the part of such packers to operate the same. Said mortgage shall also cover, for the protection of the bonds, the contracts of the packers received in consideration of the conveyance of the plants to them." Clearer evidence could hardly be found of an intention to substitute the new contracts made with the packers for their original leases. Surely the plaintiffs could not assert the original leases as against the holders of these mortgage bonds. That the contract of March 29th was intended as a substitute for the original lease is almost a demonstration.

But it is said that this contract was executory, and therefore did not relieve defendant from its obligation under the

original lease until it was performed by the defendant. There is no merit in this contention. If it was a substitute, it took the place of and satisfied the original lease, and nonperformance would not reinstate the lease.

The mere fact that it was executory is by no means conclusive. If it had been fully performed and executed, there would be no contest, and nothing left for us to decide. That it was executory, and was not performed, requires us to determine whether it was accepted as a substitute which must govern the rights and remedies of the parties, or whether, being broken, the original lease is reinstated, and the defendant is liable for the rent reserved.

Again, it is argued that conditions of the March 29th contract to be performed by the defendant were conditions precedent, and, as they were never performed, the contract did not become binding, and the rights of the parties must be determined by the original lease. Sufficient is it to say in answer to this claim that the conditions were not precedent to the making or the taking effect of that contract. They were all conditions subsequent, and constituted a breach of the agreement. Of course, plaintiff might treat the contract as broken, and sue the defendants for nonperformance, but the mere fact that defendants failed and refused to perform would not of itself reinstate the original lease. Whether or not plaintiff could resort to the original lease in case of failure or refusal of defendant to perform depends entirely upon the effect that should be given to the contract of March 29th. If it was made and accepted as a substitute for the original lease, then plaintiff's remedy was on that contract. If not so accepted, then it may be that plaintiff could resort to the original lease.

Further, it is said that plaintiff is not concluded by the contract of March 29th, for the reason that until performance there is no satisfaction of the original lease. It is well settled, however, that, when a promise or new contract is itself accepted in satisfaction of an old, an accord and satisfaction

is good, without performance. *Simmons v. Clark,* 56 Ill. 96;. *Knowles v. Knowles,* 128 Ill. 110 (21 N. E. Rep. 196); *Hall v. Smith,* 10 Iowa, 45; *White v. Gray,* 68 Me. 579; *Averill v. Wood,* 78 Mich. 342 (44 N. W. Rep. 381); *Wahl v. Barnum,* 116 N. Y. 87 (22 N. E. Rep. 280, 5 L. R. A. 623); *Babcock v. Hawkins,* 23 Vt. 561; *Creager v. Link,* 7 Md. 259; *Bullen v. McGillicuddy,* 2 Dana, 90. *Babcock v. Hawkins, supra,* is one of the leading cases on the subject; and, without quoting from it, we may say that it fully answers plaintiff's contention. This is simply an application of the rule to which we first called attention,—a rule that is firmly imbedded in our jurisprudence. Plaintiff's remedy in this case was on the contract of March 29th, and not upon the original lease. The authorities all seem to hold that, if the mortgagor makes a lease after the execution of his mortgage, there is no privity between the mortgagee of the lessor and the lessee, either before or after foreclosure, and that an attornment is necessary to create the relation of landlord and tenant. *Mills v. Hamilton,* 49 Iowa, 105; *McKircher v. Hawley,* 16 Johns. 289; *Peters v. Elkins,* 14 Ohio, 344; *Simers v. Saltus,* 3 Denio, 214; *Magill v. Hinsdale,* 6 Conn. 469; *Stanbrough v. Cook,* 83 Iowa, 705, and authorities cited. Plaintiff was under no obligation, by reason of its purchase of the lease, to perform the obligations. thereof; and, as there was no attornment by the defendant, the rights of the parties must be determined by the contract. which they actually entered into.

There is yet another view, which it seems to us is conclusive. Plaintiff acquired title to the property of the Union Stock-Yards Company, and to the lease executed by it to the defendant, under the contract with the beneficiaries of the Booge mortgage, and the contract with defendant under date of March 29th. By the terms of these contracts, it was to obtain good title, and convey the same to the defendant. It acquired its title in virtue of these contracts, not for the purpose of enforcing the original lease, but in order to extinguish

them, so that it might make such arrangements as would insure the operation of the plants. No one supposed that it was acquiring the lease for any other purpose. Plaintiff made no claim thereunder at any time prior to the bringing of this action, and it is evident that what it did amounted to a cancellation and satisfaction of that instrument. At any rate, in view of all the circumstances disclosed by the record, it is now estopped from making any claim under the original lease. The understanding was that the rights of the packing company under its contract of March 29th were to be fully protected, and what it did in procuring title to the lease and the plant was in execution of its obligations under the contract. Both parties are agreed that defendant partly performed its agreement of March 29th, and surely the plaintiff will not now be permitted to say that it is entitled to enforce the original lease. If it were allowed to do so, it would be because the parties were bound by the original contract of lease, which we have seen is not true, and, in effect, would be making a contract to which the parties never consented or agreed. If the contract of March 29th was abandoned by the defendant, as claimed, this would not of itself, as we have seen, reinstate the original lease. That, as has been stated, never had any binding force between the parties to this action.

II. Complaint is made of the court's ruling in denying plaintiff a new trial on the grounds of newly-discovered evidence. The witness whose evidence it is claimed was newly discovered was used by plaintiff on the hearing before the referee, and was quite fully examined with reference to all the transactions between defendant and the Union Stock-Yards Company and the plaintiff. The showing as to diligence in obtaining the information that is new is not satisfactory. Much that it is claimed the witness would testify to is in the form of conclusions of law and fact that would not be admissible in any event, and some of

the evidence it is claimed he would give is cumulative. For these reasons, there was no error in denying the motion.

Assuming that the foregoing conclusions are correct, there is nothing left to consider, for it is practically conceded that the judgment is right if the contract of March 29th is to be given the force and effect claimed for it by defendant.

We have gone over the voluminous record with the care that the importance of the case demands, and discover no error.—AFFIRMED.

GRANGER, C. J., not sitting.