PACIFIC MUT. LIFE INS. CO. OF CALIFORNIA v. WEBB.

(Circuit Court of Appeals, Eighth Circuit. November 6, 1907.)

No. 2,563.

1. RELEASE—RELEASE AS DEFENSE—FRAUD WHICH WILL AVOID RELEASE AT LAW.

The only fraud which may be availed of in an action at law in a federal court to avoid a formally executed release of the claim sued on is misrepresentation, deceit or trickery practiced to induce the execution of a release which the signer never intended to execute and upon which the minds of the contracting parties never met, and does not include any of those misrepresentations of fact which may have been resorted to in order to persuade the claimant to agree to the release as actually made. In such respect it is immaterial whether the release is or is not under seal.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Release, § 32.]

2. COURTS—FEDERAL COURTS—EQUITABLE DEFENSE IN ACTION AT LAW.

In the federal courts, the rule subsists that the distinction between legal and equitable defenses is always recognized, and such rule cannot be affected by state legislation or practice permitting equitable defenses in actions at law.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, §§ 912, 913.]

3. RELEASE—DEFENSE IN ACTION AT LAW—PLEADING IN AVOIDANCE—FRAUD.

In an action on an accident insurance policy in which a formal release of the claim executed by defendant for a stated consideration was pleaded as a defense, a replication which in effect denied that plaintiff executed a release but alleged that if she did it was procured by fraud and deceit in that defendant's agents represented to her that defendant was not liable on the policy and read affidavits to her purporting to state facts, known to them to be untrue, in support of such representation, whereby she was induced to accept a sum of money from defendant which purported to be a gift, does not state such a case of fraud as would avoid the release at law.

In Error to the Circuit Court of the United States for the Eastern District of Missouri.

James C. Jones (Jones, Jones, Hocker & Davis, on the brief), for plaintiff in error.

Frederick H. Bacon, for defendant in error.

Before VAN DEVANTER and ADAMS, Circuit Judges, and RINER, District Judge.

ADAMS, Circuit Judge. This was an action at law on a policy insuring Margaret Webb, the plaintiff below, in the sum of $4,000 against death of her husband as a result of external, violent, and accidental means. Defendant company, amongst other defenses pleaded accord and satisfaction, and in consideration thereof the execution by plaintiff of a written release of any and all claim against it by reason of the death of her husband. Plaintiff in her reply denied any knowledge or recollection of having executed the release, but pleaded hypothetically that if such release was executed by her it was procured by defendant's agent by "fraud, deceit, and misrepresentation of facts, and was for that reason without consideration and void." On these pleadings the case went to trial. A paper consisting of the acknowledgment of receipt of $300 in full compromise and settlement of the demand sued for in this action and an unequivocal and formal release and discharge of defendant from any and all liability for that demand was shown in evidence to have been executed by plaintiff and delivered to the defendant in consideration of the payment by the latter to the former of the agreed consideration. In view of that proof, and at the close of all the evidence, defendant requested the court to instruct the jury that plaintiff could not recover. Upon a refusal to so instruct, and after exception had been saved thereto, defendant moved the court to exclude from the consideration of the jury all evidence given in support of the replication. The court overruled that motion, and defendant duly excepted. Verdict and judgment in favor of the plaintiff followed, and the case is brought here by writ of error for review.

Whether the formal release was, until set aside by a proceeding in equity, a bar to the present action at law, is a question which underlies all others and which we will first dispose of. Our attention is called to many cases on the general subject that fraud vitiates all contracts and to some which hold that a release may be shown even in actions at law to have been procured by fraud and misrepresentation and its effect thereby avoided. But it is unnecessary and unprofitable to dwell long on those cases. The Supreme Court of the United States has authoritatively settled the matter. Hartshorn v. Day, 19 How. 211, 15 L. Ed. 605; George v. Tate, 102 U. S. 564, 26 L. Ed. 232; Union Pac. Ry. v. Harris, 158 U. S. 326, 15 Sup. Ct. 843, 39 L. Ed. 1003; Texas & Pac. Ry. Co. v. Dashiell, 198 U. S. 521, 25 Sup. Ct. 737, 49 L. Ed. 1150. In Hartshorn v. Day, Mr. Justice Nelson, speaking for the court, said:

"Fraud in the execution of the instrument has always been admitted in a court of law, as where it has been misread, or some other fraud or imposition has been practiced upon the party in procuring his signature and seal. The fraud in this aspect goes to the question whether or not the instrument ever had any legal existence. * * *"

In George v. Tate the Supreme Court, speaking by Mr. Justice Swayne, said:

"It is well settled that the only fraud permissible to be proved at law in these cases is fraud touching the execution of the instrument, such as misreading, the surreptitious substitution of one paper for another, or obtaining by some other trick or device an instrument which the party did not intend

to give. * * * The remedy is by a direct proceeding to avoid the instrument."

In Union Pac. Ry. v. Harris the question arose in connection with a lengthy and somewhat complicated charge to the jury. A clear distinction appears to have been made between the effect of misrepresenting what the release there in question was to embrace and misrepresentation of facts to procure the release as made. The contention of the plaintiff in that case was that the release was signed by him when ill and when he did not comprehend what he was doing, and that he was led to believe that he was signing a release of claims growing out of his illness only, such as outlays for doctors' services, and the like, and loss of time for two weeks. The contention of the defendant was that the release was intended to include a settlement of all matters of difference between plaintiff and defendant, including the liability of the defendant for the injuries received by plaintiff. The issue related exclusively to what was the subject-matter of the release. The Supreme Court did not discuss the question but was satisfied to say that the charge on the whole was correct. Texas & Pac. Ry. Co. v. Dashiell also dealt exclusively with what was the subject-matter of the release, and incidentally is important for elucidating the real issue in Union Pac. Ry. v. Harris.

Concerning the latter case the following observation is made:

"Several defenses were made to the release, among others, that the minds of the parties never met on the principal subject embraced in the release, namely, the damages for which the action was brought. This defense was complicated in the instructions of the court with the defenses of fraud and mental incompetency to understand the terms and extent of the release, and it is difficult to make satisfactory extracts from the charge of the trial court. Enough, however, appears to show that the court submitted to the jury the fact of mistake of injuries received, as bearing on the effect of the release, and this action was affirmed by this court."

In view of the issues in the last two cases they do not declare, as claimed by plaintiff's counsel, any different rule than that declared in the Hartshorn and George Cases. The releases there in question did not embrace the injury sued for by the respective plaintiffs, and the replications to that effect were in the nature of pleas of non est factum. The conclusion from all the cases in the Supreme Court is that the only fraud which may be availed of in an action at law to avoid a formally executed release of the claim sued on is misrepresentation, deceit, or trickery practiced to induce the execution of a release which the signer never intended to execute, and upon which the minds of the contracting parties never met, and does not include any of those misrepresentations of fact which may be resorted to in order to persuade the claimant to agree to the release as actually made.

That the old rule of the Supreme Court still prevails is affirmed generally by the national courts. In Hill v. N. Pacific Ry. Co., 51 C. C. A. 544, 113 Fed. 914, the Circuit Court of Appeals for the Ninth Circuit recognized and enforced it. In like manner also the Circuit Courts have recognized and followed it. Shampeau v. Connecticut River Lumber Co. (C. C.) 42 Fed. 760; Vandervelden v. C. & N. W. Ry. Co. (C. C.) 61 Fed. 54; Kosztelnik v. Bethlehem Iron Co. (C. C.)

91 Fed. 606; Hill v. N. Pacific Ry. Co. (C. C.) 104 Fed. 754; Such v. Bank of the State of New York (C. C.) 127 Fed. 450; Stephenson v. Supreme Council (C. C.) 130 Fed. 491; Heck v. Missouri Pac. Ry. Co. (C. C.) 147 Fed. 775.

The Circuit Court of Appeals for the Sixth circuit, as evidenced by the cases of Lumley v. Railway Co., 22 C. C. A. 60, 76 Fed. 66, and Wagner v. National Life Ins. Co., 33 C. C. A. 121, 90 Fed. 395, differs from those just referred to. But in view of what we believe to be the doctrine of the Supreme Court as declared and followed in the cases supra, we are unable to adopt the conclusion reached by the learned and distinguished judges of that circuit.

Distinction is made by some courts between cases involving an informal receipt as distinguished from a formal release like Such v. Bank of the State of New York, supra, and between releases under seals and those not under seal. While there may be some ground for a distinction between cases involving a mere receipt, with no formal release, the consideration of which may always be inquired into and explained and cases involving formal deeds of release, as to which we express no opinion, we are unable to perceive any difference in principle between a formal release under seal and one not under seal. They may both alike be reformed, enforced or rescinded in equity. Certainly we cannot in this case give any consideration to the difference if there be such. The present release was not under seal, but was made in Missouri, and is subject to the law of Missouri. By that law the use of private seals in written contracts or other instruments theretofore required to be under seal is abolished, and a seal, if used, does not affect the force, validity, or character of the instrument or in any way change its significance or construction. Rev. St. Mo. 1899, § 893 [Ann. St. 1906, p. 829].

Inspired doubtless by the varying and conflicting opinions of different judges of the Supreme Court of Missouri on the question now under consideration, as illustrated by Girard v. St. Louis Car Wheel Co., 123 Mo. 358, 27 S. W. 648, 25 L. R. A. 514, 45 Am. St. Rep. 556, and Och v. M., K. & T. Ry. Co., 130 Mo. 27, 31 S. W. 962, 36 L. R. A. 442, the Legislature of Missouri in 1899 enacted the following law:

"Whenever a release, composition, settlement or other discharge of the cause of action sued on shall be set up or pleaded in the answer in bar to plaintiff's cause of action sued on, it shall be permissible in the reply to allege any facts showing or tending to show that said release, composition, settlement or other discharge was fraudulently or wrongfully procured from plaintiff, and the issue or issues thus raised shall be submitted with all the other issues in the case to the jury, and a general verdict or finding upon all the issues, including the issue or issues of fraud so raised, shall be sufficient." Rev. St. Mo. 1899, § 654 [Ann. St. 1906, p. 670].

This section is relied on by plaintiff's counsel in support of his contention that fraud, deceit, and misrepresentation practiced to secure the release in question may be shown in this action at law to avoid it. This statute, however, does not aid him. The rescission of the deed of release sought to be accomplished in this case is essentially and traditionally an equitable remedy. It is peculiarly appropriate for the consideration of a chancellor and not of a jury. It depends in many cases upon the exercise of a wise discretion in the light of countervailing

equities; is frequently awarded on conditions imposed in the final decree, and only when the remedy is invoked without unreasonable delay. The proof justifying it must be clear, convincing, and unequivocal. In view of these rules governing the administration of an equitable remedy, it is apparent that an action at law which is governed by more inflexible rules is not well adapted to administer that remedy. So manifest is this that rescission of contracts for fraud has, time out of mind, been a well-recognized subject of equitable cognizance.

Whatever may be the practice in code states, where the ancient distinction between legal and equitable remedies has been abolished, and where but one form of action is recognized, the rule subsists in the national courts that the distinction between legal and equitable defenses is always recognized. "They cannot be mixed. Equitable suits must be on the equity side of the docket, and actions at law on the law side. * * * Whatever the practice may be in state courts, in many of which the code practice obtains, the distinction between actions at law and suits in equity, together with legal and equitable defenses being abolished, the same court administering both law and equity, such practice does not obtain in the courts of the United States." Levi v. Mathews, 145 Fed. 152, 154, 76 C. C. A. 122, 124. "Although the forms of proceedings and practice in the state courts have been adopted in the District Court, yet the adoption of the state practice must not be understood as confounding the principles of law and equity, nor as authorizing legal and equitable claims to be blended together in one suit." Bennett v. Butterworth, 11 How. 669, 674, 13 L. Ed. 859. "The remedies in the courts of the United States are at common law or in equity, not according to the practice of state courts, but according to the principles of common law and equity, as distinguished and defined in that country from which we derive our knowledge of these principles; and, although the forms of proceedings and practice in the state courts shall have been adopted in the Circuit Courts of the United States, yet the adoption of the state practice must not be understood as confounding the principles of law and equity, nor as authorizing legal and equitable claims to be blended together in one suit." Lindsay v. Shreveport Bank, 156 U. S. 485, 493, 15 Sup. Ct. 472, 475, 39 L. Ed. 505, and cases cited. To the same effect see, also, Hill v. Northern Pac. Ry. Co., supra, and cases cited.

We recognize that state statutes frequently create new and enlarge old equitable rights, and that substantive rights of that kind are enforced in the national courts, but we perceive nothing in the Missouri statute in question of that character. It does nothing but change the forum of an equitable action from a court of equity, where it naturally belongs, to a court of law, where it does not naturally belong. While the state may do this with respect to its own courts, it clearly has no power to legislate away the equitable jurisdiction of the national courts.

The case of Cowley v. Northern Pac. R. R. Co., 159 U. S. 569, 16 Sup. Ct. 127, 40 L. Ed. 263, relied on by plaintiff's counsel, does not support his contention. The case concerns the rights of parties in the Circuit Court on removal of a suit from the state court. It declares the obligation of the national courts to recognize and enforce new rights created by state statute, but lest it should be distorted into

authority for plaintiff's present, contention the court apparently in a precautionary way observes:

"While the federal court may be compelled to deal with the case according to the forms and modes of proceeding of a court of equity, it remains in substance a proceeding under the statute, with the original rights of the parties unchanged."

To avoid the effect·of the rule of the Supreme Court on the subject in question, learned counsel for plaintiff in his brief undertakes to assimilate the replication in this case to that in the Harris Case. He argues that this replication tenders the issue that there was no meeting of minds of the contracting. parties, and that trickery was practiced in securing the execution of the release as distinguished from that practiced to induce the agreement for the release. We think he is mistaken about this. The replication, so far as it is necessary to quote it for our present purposes, is as follows:

"That immediately after the death of her said husband [which occurred January 27, 1905] one Polk, the general agent of the said defendant company, * * * came to her house, and then and there stated that the defendant was not liable on the policy, and then and there informed her that her husband had died of disease, whereby the company was not liable. That afterwards, on March 2d, 1905, or thereabouts, at the request of said Polk, she went to the office of said Polk and the office of said company in the city of St. Louis, and said Polk and the attorney of said defendant, one Sample, from Chicago, again informed her that the company would not pay said policy and was not liable thereon, because her said husband had died of disease and not accident. all of which was false; and then and there said Polk and said Sample informed plaintiff that they had in .their possession certain affidavits, made by physicians, to the effect that her husband had died from disease or had been murdered, and that the coroner had rendered a verdict that her said husband had died of disease; and said Polk and said Sample then and there read to plaintiff what purported to be affidavits of certain persons, and what purported to be a verdict of the coroner of the said city of St. Louis, to the effect that her said husband had either died from disease or had been slugged, from the effect of which injury he had died, all of which was false and known by said Polk and said Sample to be false; and said Polk and said Sample, acting respectively as general agent and attorney for said defendant company, then and there offered to give plaintiff $300 as a gift. Plaintiff states that at the time she being sick and infirm and partially blind and not able to read and being distressed in mind on the account of the death of her said husband, and believing the statements of said Polk and said Sample, accepted said sum of $300, which purported to be a gift; but plaintiff has no knowledge or recollection of ever having signed a release of said policy as set forth in said answer. And plaintiff states that because of the said misrepresentations and false statements of said defendant by its agents taking advantage of her condition of mind and body, as aforesaid, the said release which is set up in defendant's said answer, if any was ever given, was obtained by fraud, deceit, and misrepresentation, and was without consideration, and is .void and of no effect."

Scrutiny of the replication discloses that the defendant represented to plaintiff that she had ·no cause of action and gave reasons for it, but offered, in order to get a release of any possible claim, a gift or consideration of $300. The· only statements of defendant's agents which are complained of are those to the effect that they had information which justified them in believing that plaintiff had no meritorious cause of action against defendant. She says she believed those statements, and accepted $300, "which purported to be a gift." Naturally enough it purported to be a gift and was a gift, if what the agent said

was true, namely, that the plaintiff had no cause of action. It will be noticed that plaintiff nowhere in the replication said that when she signed the release in question she believed she was signing a receipt for a gift. No allegations of the replication can be fairly construed into tendering an issue that the minds of the parties did not meet on the terms of the release as executed. The replication is a curious pleading. It does not confess the signing of the release, and avoid it on the ground that the minds of the parties had not met, or that it was falsely represented to her to be a receipt for a gift; but it is in effect a denial by plaintiff that she ever executed a release, and a hypothetical plea that if she did it was obtained by fraud, deceit, and misrepresentation. The bare fact, if it be a fact, that plaintiff was blind and not able to read, affords her no legal protection. As said by this court in Chicago, St. P., M. & O. R. Co. v. Belliwith, 28 C. C. A. 358, 83 Fed. 437:

"A written contract is the highest evidence of the terms of an agreement between the parties to it, and it is the duty of every contracting party to learn and know its contents before he signs and delivers it. * * * If one can read his contract, his failure to do so is such gross negligence that it will estop him from denying it, unless he has been dissuaded from reading it by some trick or artifice practiced by the opposite party. If he cannot read it, it is as much his duty to procure some reliable person to read and explain it to him, before he signs it, as it would be to read it before he signed it, if he were able to do so, and his failure to obtain a reading and explanation of it is such gross negligence as will estop him from avoiding it on the ground that he was ignorant of its contents."

The replication, in our opinion, discloses no advantage taken of the plaintiff by the defendant's agents to induce her to sign the paper. If it shows anything, it shows that the release was obtained by fraud, deceit, and misrepresentation, which might, if proved, afford ground for rescission of the contract in equity.

The conclusion already foreshadowed is that the Circuit Court erred in not directing a verdict for defendant. This conclusion renders unnecessary any consideration of the many other questions presented in the case. Until the release is set aside, it constitutes an effectual bar to any action on the policy, and unless it shall be set aside, the other questions are moot questions only. The judgment is reversed, and the cause remanded, with directions to grant a new trial.