CENTRAL TRUST CO. OF NEW YORK v. COLORADO RY., LIGHT & POWER CO.

(District Court, D. Colorado. October 7, 1912.)

No. 5,691.

1. WORK AND LABOR (§ 15*)—ACTION—DEFENSES.

It is no defense to an action to recover for repairs to machinery, made by plaintiff personally, that the repairs were made necessary by the negligence of the company which made and sold the machinery, through its agent who installed the same, and that plaintiff was also a sales agent for the same company.

[Ed. Note.—For other cases, see Work and Labor, Cent. Dig. § 36; Dec. Dig. § 15.*]

2. MASTER AND SERVANT (§ 301*)—EMPLOYÉ OF SUBCONTRACTOR—LIABILITY FOR NEGLIGENCE.

Where a contract with a construction company for the erection of a building required it to furnish and install boilers therein, and it contracted with a boiler company to furnish the boilers, and also a man to install the same, such man, as to the owner of the building, was the agent of the construction company, which is alone responsible to the owner for his negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1210–1216; Dec. Dig. § 301.*]

3. WORK AND LABOR (§ 15*)—ACTION—DEFENSES—ESTOPPEL.

Where a controversy arose between the owner of a building and a boiler company, which had furnished and installed boilers therein, as to which was liable for the cost of certain repairs required to be made on the boilers, and in order that the work should proceed the owner agreed to pay for the same and arbitrate the question of liability afterward, it cannot defend against an action to recover for such work on the ground that the boiler company is liable therefor.

[Ed. Note.—For other cases, see Work and Labor, Cent. Dig. § 36; Dec. Dig. § 15.*]

4. CONTRACTS (§ 346*)—VARIANCE—PARTIES TO CONTRACT.

A petition alleging an oral contract between defendant and plaintiff for the doing of certain work by plaintiff is not supported by proof of a written contract, to which the name of a corporation for which plaintiff was agent was signed, as well as plaintiff's, and by which the corporation clearly undertook to do the work.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1718–1753; Dec. Dig. § 346.*]

5. CORPORATIONS (§ 482*)—MORTGAGES BY PUBLIC SERVICE CORPORATIONS—FORECLOSURE—CLAIMS ENTITLED TO PRIORITY.

A claim against a public service corporation for betterments on its plant, made with a view to the extension of its business, rather than for present use, and contracted for within four months prior to the appointment of a receiver for the company in a suit for foreclosure of a mortgage securing bonds, but after default in payment of interest on

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the bonds, is not one for a current expense incurred in the ordinary operation of the company, and is not entitled to preference over the mortgage debt from the proceeds of the property sold under the decree in such suit.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1870, 1877–1888; Dec. Dig. § 482.*]

6. CORPORATIONS (§ 482*)—MORTGAGES BY PUBLIC SERVICE CORPORATIONS—FORECLOSURE—CLAIMS ENTITLED TO PRIORITY.

The fact that the work was not completed until after the appointment of the receiver does not entitle the claim for such part of the work as was done afterward to a preference, where its continuance was not authorized by the receiver or the court, and there was no diversion of current income for the benefit of the mortgagee.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1870, 1877–1888; Dec. Dig. § 482.*]

In Equity. Suit by the Central Trust Company of New York against the Colorado Railway, Light & Power Company. In the matter of the intervening petition of F. N. Kronenberg for allowance of claim arising on open account, and also that the claim be declared a lien upon the fund arising from the foreclosure sale. Petition dismissed.

E. E. Whitted, of Denver, Colo., for plaintiff.

D. Ramsay Patterson, of Denver, Colo., for intervening petitioner.

POPE, District Judge. A large part of the oral argument was devoted to the contention that petitioner, Kronenberg, could not recover because the repairs for which suit was brought were the result of the negligence of the Parker Boiler Company, through its agent, Holton, in leaving water in the boilers at the time of the original construction, which water subsequently froze, causing the damages for which the repair bill was incurred. It is said that Kronenberg, being the Colorado sales agent of the Parker Boiler Company, cannot recover personally because of the antecedent negligence of his company, acting through Holton, its agent.

[1, 2] This contention carries its own answer. This is a suit by Kronenberg personally. To this manifestly it is no defense that the company for which he happened to be an agent might, by the negligence of another agent, have damaged defendant. Such a cause of action against the Parker Boiler Company can constitute no defense to a cause of action by Kronenberg. There are other conclusive reasons against this defense, as follows:

(2) The elimination upon the trial of all the defenses except that of the general issue leaves no pleading upon which to predicate the present contention.

(3) Holton, in erecting the boilers, was (from the standpoint of the Colorado Railway, Light & Power Company) not the agent of the Parker Boiler Company, but of the Walston H. Brown Construction Company. The undisputed proof is that the defendant Power Company had no contract with the Boiler Company, but solely with the Brown Construction Company, which latter was to furnish and install the boilers. To fill its contract with the Power

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Company the Brown Construction Company bought boilers from the Parker Boiler Company, and the latter company, as a part of the contract of sale, agreed to furnish and did furnish one of its employés, Holton, to install the boilers. Holton was paid by the Parker Boiler Company, but this expense was charged back by that company against the Construction Company, so that in effect Holton was an employé of the Construction Company, paid by that company. His negligence, if any, therefore, was the negligence of the company by whom he was employed and paid, not of the company which loaned him for that purpose. If any damage accrued to the Power Company by his acts, the claim of that company is not against the Boiler Company, which loaned him, but against the Construction Company, which employed him and paid him, and with which and only with which the Power Company had any dealings as to the installation of the plant.

(4) The testimony does not establish negligence by Holton, even viewed as agent of the Boiler Company. The proof shows that the introduction of water into the boilers was for a perfectly proper purpose, to wit, a hydrostatic test. The Power Company knew that this test was made. (Letter from Vickroy, relieving Holton, dated September 15, 1910.) It was made in midsummer. Holton testifies that the water was left in the boilers at the request of Vickroy, the chief engineer of the company, who stated that they desired shortly to start a slow fire for the purpose of drying the brickwork. He also testifies that Mr. Colby, then the company's engineer on the very work upon which he was employed, and to whom he was referred by Mr. Vickroy, was informed that the water was being left there, and was fully instructed as to how it might be drawn out. Directions as to the care of the boilers and how water might be drawn off were also given in printed instructions furnished the Power Company as early as July 16, 1910. Vickroy contradicts Holton so far as the alleged instructions by him to Holton were concerned; but Colby was not called by the defendant company to meet this testimony of Holton, which upon this important point is uncontradicted, and, indeed, is corroborated by Harlan, the defendant's manager, who says such notice might have been given to some other officer then at the plant, as some changes were made about that time. Upon the record, therefore, the defendant had notice that water was being left in the boilers, and it had notice of how this might be drawn, and its action in leaving the boilers until winter in the condition they were in when Holton was relieved was the company's negligence, not Holton's nor his employer's. There was, therefore, no action against the Boiler Company arising out of the bursting of the boilers.

[3] (5) Even if there were any case against the Boiler Company, that could not be asserted as a defense to this suit, in view of the contract of February 14, 1911. At that time a controversy arose as to who should stand for these repairs, the Boiler Company or the defendant Power Company. The Boiler Company refused to proceed unless payment was assured, and ordered its material withheld and its employé recalled. In order to get these repairs promptly

finished, the defendant agreed to pay for them, reserving to itself the right by a subsequent proceeding (which was to be by arbitration) to determine the question of liability between itself and the boiler people. This contract was: Pay first; arbitrate afterwards. The attempt in this suit to try the issue is a clear evasion of the terms of the contract and cannot be permitted.

[4] But independently of this defense, upon which the court holds adversely to defendant, can the complainant recover? I am impressed with the fact that he cannot, at least upon the present pleadings.

(1) The complaint declares upon "the verbal order and request of the defendant." The proof shows that any claim is based upon a written contract dated February 14, 1911. Coming to this latter, the contract is evidently one between the defendant and the Parker Boiler Company, not Kronenberg. While in the form of a letter addressed to Kronenberg (who was the company's agent for Colorado), it is signed "Accepted, F. W. Kronenberg, The Parker Boiler Co." More significant, even, is the provision, "It is also agreed *the Parker Boiler Company* will push the work continuously until completed," thus showing that it was a contract, not with Kronenberg, but with his company. There is oral testimony by Kronenberg that he signed the contract without noticing the words "The Parker Boiler Company" below his name; but there is no explanation of how, if it was mutually understood to be a personal agreement, it contained the provision that the Boiler Company, not Kronenberg, was to "push the work continuously until completed." Its clear import is an agreement with the Boiler Company, and as such it cannot sustain a personal action by Kronenberg. Whether, upon the ground of mutual mistake in its execution, it could be reformed so as to be a personal contract, and as such enforced, need not be here determined, for the reason that there are no pleadings asking such reformation and enforcement as reformed. It seems clear that upon the present petition, declaring upon a personal verbal agreement there can be no judgment based upon proof of a written corporate agreement. Pacific Mutual Co. v. Webb, 157 Fed. 155, 84 C. C. A. 603, 13 Ann. Cas. 752.

Another obstacle presents itself to a judgment for Kronenberg. Even if on February 14, 1911, he entered into a personal agreement with defendant to complete the work, he is entitled to compensation only from that time forward. Previous to that the material delivered and the services of Holton had been under the understanding with the Boiler Company, initiated by the letter of January 5, 1911, written to it by Mr. Harlan on behalf of the defendant. It follows, therefore, that at least as to the material furnished and labor done up to February 14, 1911, the date of the letter to Kronenberg, the cause of action is in the Boiler Company. The proofs are not sufficiently specific to segregate how much was before and how much after that date. The correspondence between the Boiler Company and its representatives on the ground, Kronenberg and Holton, indicates that a large part of the material had been delivered before February 14th; but the value of this does not appear. Neither is the value of the labor separated between the two accounts, except that

presumably, at least, what the account shows to have been earned and expended by Holton after March 1st would be properly chargeable on Kronenberg's personal account. Even if, therefore, upon the pleadings, Kronenberg could recover personally, there is not, upon the present record, sufficient data upon which the court could say with any accuracy what should be the amount recovered. It follows, therefore, that no judgment can upon the present record be awarded against the defendant Power Company.

[5] It is next urged that, whatever be the view of the court as to the defendant company's liability, the claim, if allowed, is not a lien upon the funds in the hands of the clerk arising out of the receivership. The company defaulted upon its interest on February 1, 1911, and was placed in the hands of a receiver on May 16, 1911, upon a mortgage protecting some $1,800,000 of bonds, covering all of its properties. The mortgage bears date January 4, 1910. There was a decree of foreclosure on June 28, 1911, under which a sale for $950,000 was made on August 2, 1911. Under this state of the record, may the claim, if allowed, be adjudged a lien against the proceeds of the sale superior to the bonds? This is probably the controlling practical question after all, since presumably the Power Company is insolvent and a judgment against it would be valueless. As we have seen, the claim here made is for material and labor furnished in repairing certain boilers between January 14, 1911, the date on which Kronenberg had reached Trinidad, and June 20, 1911, about which date Holton finished work. The boilers were new, and had never been used prior to the repairs, nor, indeed, by the testimony, since. When erected, they were not designed for immediate use, but apparently intended ultimately to supplement the power at defendant's plant. The only evidence as to the need for them is that contained in a telegram from defendant to the Boiler Company, dated January 10, 1911, in which it is said that there is a desire "to fire one battery boilers by hand Monday (January) sixteenth," and requesting immediate work toward getting the boilers in shape. It may be assumed, therefore, that the boilers, when repaired, would conduce to the greater efficiency of the plant, and thus, as repaired, made the Trust Company's mortgage to that extent more amply secured. But the repairs were in no sense current expenses of the defendant, nor incidental to the ordinary operation of the plant. They were designed to its extension and enlargement, and were thus in the nature of betterments looking toward a more adequate plant. The repairs, as will be noted from the dates above given, were in part done during the four months preceding the appointment of the receiver, and in part during the month following it. It is not shown that the receiver took any cognizance of the progress of the repairs, which were apparently nearly completed when he took charge, or that the court ever authorized them to be continued. Indeed, so far as the record shows, Kronenberg and Holton completed them pursuant simply to the letter to the former from the Power Company, dated February 14, 1911, the company paying the workmen.

There is nothing alleged nor proven, showing as against the bondholders any equity in claimant, as, for instance, that during the progress of the repairs or thereafter there was any diversion of the net income of the plant to such other directions as deprived claimant of any of his equitable rights. Indeed, there is nothing to show that the plant had any earnings from January to June, 1911, over its current expenses, or even equaling them. Its default upon its interest charges on February 1, 1911, would indicate that it had not. Under such circumstances, would a decree be justified that utilized the proceeds of the foreclosure sale in payment of this claim, to the exclusion of those holding bonds protected by the mortgage of 1910? We think not. It would be a vain show of research to outline the numerous federal decisions which have dealt with this subject, for the Circuit Court of Appeals for this circuit, by a decision as recent as 1907, has fixed the law for this jurisdiction. That case—Rodger Ballast Car Co. v. Omaha Co., 154 Fed. 629, 83 C. C. A. 403—was one dealing with the question of whether the purchase price of certain ballast cars bought immediately before the receivership for a necessary corporate end was to be considered a prior lien upon the proceeds of the foreclosure. The court held that it was not, and in so doing announces the following rules of law:

"A court of equity, engaged in administering mortgaged railroad property under a receivership in a foreclosure suit, may in its discretion prefer unpaid claims for current expenses incurred in the ordinary operation of the railroad within a limited time, usually six months, before the receivership, to the claims of bondholders secured by a prior mortgage, in the distribution of the income or of the proceeds of the corpus of the mortgaged property. * * * The test of the equity which entitles a claim to a preference over the mortgage in foreclosure is whether the consideration of the claim was or was not a part of the current expenses of the ordinary operation of the corporation within the time limited. * * * Neither the fact that the consideration of the claim conserved the property and increased the security of the mortgagee, nor the fact that it was necessary to keep the mortgagor a going concern or to continue its business or operation, will raise a preferential equity in its favor, if its consideration was not a part of the current expenses of the ordinary operation of the mortgagor. * * * Claims for the purchase price or for the rental of engines, or freight and passenger cars, are not entitled to preference in payment out of the income or out of the corpus of the mortgaged property over those of creditors secured by prior mortgages. * * * A claim for $26,192.05, the purchase price of 32 ballast cars, bought by a mortgagor railroad company operating 168 miles of railroad within six months of the appointment of receivers, is not a current expense of the ordinary operation of such a railroad company, and is not entitled to preference in payment out of the income or the corpus of the mortgaged property in preference to those of bondholders secured by prior mortgages. * * * The broad language of the dictum in Fosdick v. Schall, 99 U. S. 235, 252, 25 L. Ed. 339, that 'necessary operating and managing expenses, proper equipment, and useful improvements' are to be deducted from the current income before the net income out of which the mortgage is to be paid arises, has been disapproved and modified, and the class of claims entitled to equitable preference has been limited to those for the current expenses of ordinary operation within six months of the receivership, by later decisions of the Supreme Court."

[6] That case impresses me as conclusive against the present claim. It is true that a small portion of the account here sued on—about

$400 out of a total of over $3,000—was incurred subsequent to May 16, 1911, and thus after the receivership. But this does not differentiate the case as to this part of the claim in principle from Rodger Co. v. Omaha Co. Under the circumstances of this case, both upon pleadings and proofs, the claim covering this month or so stands upon no higher basis as against the bondholders than the part of the account preceding the receivership. We deem this established in principle, not only by the case just cited, but by the following decisions of the federal courts: St. Louis Trust Co. v. Riley, 70 Fed. 32, 16 C. C. A. 610, 30 L. R. A. 456; Fosdick v. Schall, 99 U. S. 235, 25 L. Ed. 339; Wood v. Guarantee Trust Co., 128 U. S. 416, 9 Sup. Ct. 131, 32 L. Ed. 472; Kneeland v. American Co., 136 U. S. 89, 10 Sup. Ct. 950, 34 L. Ed. 379; Thomas v. Western Car Co., 149 U. S. 95, 13 Sup. Ct. 824, 37 L. Ed. 663; Virginia Co. v. C. R. R. & Bkg. Co., 170 U. S. 355, 18 Sup. Ct. 657, 42 L. Ed. 1068; Hale v. Frost, 99 U. S. 389, 25 L. Ed. 419; So. Rwy. Co. v. Carnagie Co., 176 U. S. 257, 20 Sup. Ct. 347, 44 L. Ed. 458; Lackawanna Co. v. Farmers' Loan & Trust Co., 176 U. S. 298, 20 Sup. Ct. 363, 44 L. Ed. 475; Gregg v. Metropolitan Trust Co., 197 U. S. 183, 25 Sup. Ct. 415, 49 L. Ed. 717.

The last three cases show that to give a claim a priority over a mortgage lien at least two things must concur: First, the claim must have been part of the current expenses in the regular course of business; and, second, if such, there must have been a diversion of the net income (from which current expenses are properly payable) to betterments, interest charges, or other purpose beneficial to the mortgage creditors, thus detracting from claimant's equity to the fund, and thus calling for reparation out of the sale of the property. The facts of the present case do not bring the claim, whether accruing before or after May 16, 1911, within either, much less both, of the essential conditions last named.

Petitioner's counsel have cited, in a brief filed since the hearing, a number of authorities which, it is claimed, support his position. Two federal cases are specially emphasized, Miltenberger v. Logansport, etc., R. Co., 106 U. S. 286, 1 Sup. Ct. 140, 27 L. Ed. 117, and Union Trust Co. v. Souther, 107 U. S. 591, 2 Sup. Ct. 295, 27 L. Ed. 488. There are, it is true, in the first case some expressions which are broad enough to sustain petitioner's view. The meaning of the Supreme Court has, however, been clarified, and the apparent scope of its decision in this case narrowed, by the later cases from that tribunal, above cited. An examination of the Gregg Case, supra, including the dissenting opinion, written by Mr. Justice McKenna will show the true extent of the Miltenberger Case as viewed by the court at this time. The same observations apply to the Souther Case. It is further to be noted that in the latter case there had been a diversion of the net income from current expenses to purposes directly advantageous to the bondholders, as, for instance, purchase of ground and the making of permanent improvements, and this was considered by the court an equitable ground upon which to decree restitution by the payment of the claim there made. As has been pointed out, how-

ever, there is nothing of that kind in the present record. Petitioner also cites a number of state authorities. But these, however, nearly to the point, cannot have any weight here as against the rule which we conceive to have been declared by the higher federal courts.

It follows, therefore, that Kronenberg's claim may not be given priority over the mortgage lien, and his petition must accordingly be dismissed.