### ELIOPOLO *v.* EICHOLZ *et al.*

ATKINSON, J. 1. "One having the capacity and opportunity to read a written contract, and who signs it, not under any emergency, and whose signature is not obtained by any trick or artifice of the other party, can not afterwards set up fraud in the procurement of his signature to the instrument." *Truitt-Silvey Hat Co.* v. *Callaway*, 130 *Ga.* 637 (2) (61 S. E. 481); *Stoddard Manufacturing Co.* v. *Adams*, 122 *Ga.* 802 (50 S. E. 915).

2. "Equity will not reform a written contract because of mistake as to the contents of the writing on the part of the complaining party (who was able to read), and fraud of the other party which consists only in making false representations as to such contents, on which the complaining party relied as true because of confidence in the party making them, no fiduciary or confidential relation existing between the par-

Appeal and Error 3 C. J. p. 1371, n. 36.
Contracts 13 C. J. p. 370, n. 25.
Reformation of Instruments 34 Cyc. p. 921, n. 13; p. 988, n. 37, 38.

ties, and no sufficient excuse appearing why the complaining party did not read the contract." *Weaver* v. *Roberson,* 134 *Ga.* 149 (67 S. E. 662). The above principle does not apply to actions for reformation of instruments which by mutual mistake do not evidence the true agreement of the parties. *Green* v. *Johnson,* 153 *Ga.* 738 (3) (113 S. E. 402).

3. An assignment of error on a refusal of the trial judge to allow a witness to answer a question is imperfect where it is not alleged that the court was informed by counsel, at the time, as to the answer anticipated from the witness. *McElwaney* v. *MacDiarmid,* 131 *Ga.* 97 (2 *a*) (62 S. E. 20). The assignments of error relating to refusal of the court to allow a question propounded to the witness were insufficient to comply with the foregoing rule.

4. The written instrument that the plaintiff sought to have reformed in this case purports to speak the entire contract, and is not ambiguous. The evidence shows that the plaintiff signed the instrument, and that he could have read it, but failed to do so. It also fails to show that his signature was obtained by any trick or artifice of the other party. It also fails to show that the contract was the result of mutual mistake of the parties.

5. The judge did not err in granting a nonsuit.

*Judgment affirmed. All the Justices concur, except Hines, J., dissenting.*

No. 4811. FEBRUARY 15, 1926.

Equitable petition. Before Judge Meldrim. Chatham superior court. December 17, 1924.

Mrs. Rose Eicholz owned certain storehouses in Savannah known as West Broad Street numbers 436 (vacant), 438 (used as a candy and soft-drink place), and 440 (used as a pawnshop). John G. Eliopolo was proprietor of a store at 434 West Broad Street in which fruit, candies, soft drinks, cigars, and the like were sold. On May 17, 1923, a contract for lease of number 436 to Eliopolo was signed by T. A. Waters as agent for Mrs. Eicholz, and by Eliopolo. The rent was payable in monthly advance installments at the office of the agent. The contract contained the clause: "It is understood and agreed and as of the essence of this contract that the said premises can not be rented for any line of business that will be in competition to the present tenants." The lease did not specifically mention any premises owned by Mrs. Eicholz except the store number 436 that was leased. After the lease was so executed, the Crown Candy Company, a lessee of number 438, commenced selling fruit in competition with the fruit business of Eliopolo which he conducted at his own store, number 434. On June 19, 1924, Eliopolo instituted an action against Mrs. Eicholz and the Crown Candy Company, to reform his con-

tract of lease, and to enjoin the competitive sale of fruit at number 438. The petition alleged that the above-quoted clause of the contract was ambiguous, because petitioner was the only tenant and intended to be the only tenant to occupy the leased premises, and "that it was agreed and definitely understood between said T. A. Waters as agent for the landlord and your petitioner that he was not to be at liberty to conduct any business upon the leased premises that would be in competition with the other property of said landlord in said block, to wit, number 438 and 440 West Broad Street, and at the same time that said adjoining property 438 and 440 West Broad Street was not to be rented to any business that would be in competition with the business conducted by your petitioner, to wit that of a fruit store, candies, soft drinks, cigars, cigarettes, and such articles as are generally kept in a fruit stand;" that failure "to insert this clause in the contract of rental was done by accident and mistake, but to deny your petitioner the benefit of such clause will be a fraud upon him;" and that petitioner would never "have rented the premises save for the understanding and agreement heretofore referred to, namely, that the other property of Mrs. Eicholz could not be rented for the conduct of a business similar to his own."

An amendment to the petition alleged that petitioner's only purpose in leasing number 436 was to prevent a competing fruit business at that place, which was well known by defendant's agent, and that he was induced to rent it because the agent informed him that if he did not lease the property it would be leased to some one who would conduct in it a fruit business; that said agent told petitioner "if he would rent the store at number 436 . . he would prevent a fruit store from being conducted at number 436, . . and that in addition thereto he would be protected from a fruit store being conducted at either 438 or 440, . . and that the lease would contain such stipulation;" that he would sublet 436 for petitioner, and in that way save him nearly the amount he would have to pay to the defendant; that petitioner "is a foreigner and can not read and understand English only to a very limited extent, and that he had every confidence in the said T. A. Waters, who told him the lease as prepared contained such stipulation, and he relied upon the statements made by the said T. A. Waters; that he could not understand said lease and had

no reason to believe that the said T. A. Waters would take advantage of him, and trusted him implicitly and signed same only when he was assured that the lease was drawn in accordance with the agreement hereinbefore set out; . . that while the said lease contains a covenant that he was not to be allowed to sublet the said premises to any one without the written consent of the landlord, this was not explained to your petitioner and was never understood by him." The amendment also alleged that when petitioner "discovered the said property was being used as a fruit store, in violation of his agreement of rental, he at once, called Mrs. Eicholz's attention to the fact, and that Mrs. Eicholz informed your petitioner not to do anything, as her lawyer was out of the city, and that as soon as he returned she would take the matter up with him and have the sale of fruit stopped upon said premises; that he saw the said Mrs. Eicholz three times with reference to this matter, and called her attention to the fact that his only idea in renting said premises was to prevent the injurious competition to his business; . . that all of the surrounding circumstances show the understanding between the said T. A. Waters as agent for the said landlord and himself were as herein set forth, and also shows that both your petitioner and said T. A. Waters fully understood the entire contract and agreement, and both were acting thereunder." In paragraph 13 it was alleged "that before bringing the present action he called upon the said T. A. Waters, who confirmed all agreements and understandings herein set forth, and that the said T. A. Waters voluntarily accompanied your petitioner to the office of . . his attorney at law, where the said T. A. Waters, in the presence of your petitioner informed the said [attorney] that he had made a mistake in the drawing of the lease. What he meant to say was, that John G. Eliopolo was not to be allowed to conduct a candy store and soft-drink stand or pawnshop upon the premises number 436 West Broad Street, and that the said lease would further contain the stipulation that no fruit stand or cigar stand or any commodities handled by your petitioner saving candy and soft drinks could be conducted at numbers 438 and 440 West Broad Street, and would not be leased to any business that would compete with that of your petitioner except as above stated."

Another amendment to the petition alleged that at the time plain-

tiff rented the property and at the time of the conversation to which reference was made in paragraph 13 of the first amendment, and at the time of the filing of this amendment to the petition, Waters was agent for the defendant. Also that the Crown Candy Company, lessee of store number 438, commenced selling fruit in the store in May, 1924. A copy of the lease was attached to the original petition as a part thereof. It was upon a printed form in which the blanks were filled by typewritten matter. The defendant's answer admitted the making of the signed contract, but denied the allegations on which reformation was sought, and alleged substantially, that there was no accident or mistake in the making or execution of the lease, but it was entered into after a full understanding by both parties of its terms; that the clause quoted in the petition was placed in the lease for the protection of the other tenants of the landlord, and not at the request of the plaintiff; that no agreement was entered into that the landlord should be restricted in the leasing or occupation or use to which she might put her other property; that the plaintiff obligated himself, fully understanding and agreeing that he would not place or use the premises leased by him in a line of competition with the business or businesses carried on by the other tenants of the defendant; that the terms and conditions of the lease were fully known to plaintiff at the time of its execution, and were consented to by him freely and voluntarily, and nothing was omitted by accident, mistake, or otherwise.

At the trial the plaintiff testified on direct examination: "I rented the premises from Mr. T. A. Waters, who promised me if I got that place there would not be any fruit business in the block, that he would rent the place for another kind of business. I rented the place for that purpose for one hundred and twenty-five dollars per month, and Mr. Waters rented it. I gave it to him that same day to rent, and he rented it for a shoe store for one hundred and ten dollars per month. . . At the time I rented this property Mr. Waters had it to rent, and I gave it to him to rent the same day, and we never took the rent sign down from the building. At the time I rented this property . . . there was a pawnshop in one of the stores, and a candy kitchen and soft drinks in the other, nothing else. After I rented the place it stayed vacant for more than two months, and I paid the

rent during that time. The agreement was to keep any one else from having a store for fruit, and would not allow me to put in a candy store or pawnshop; that I could rent it for something else, but not for a candy store or pawnshop. I can not read English so much, but I took it to Mr. Waters, and he told me absolutely that there would be no fruit there and they would not rent stores for fruit. He was acting for me and for Mrs. Rose Eicholz. Mr. Waters drew up the contract, and I signed it but never read it. Mr. Waters signed it. After the fruit began to come in the next store I called up Mr. Waters, but could not get him; so I called to his office and told him there was a fruit store next door. He told me he would see the landlord, and a few days later I told him I had seen Mrs. Rose Eicholz. A few days later I saw Mrs. Eicholz, and she said, ' Don't do anything,' she would put them out as soon as Mr. Abrahams came back. Her lawyer was out of the city, but to wait a few days. I kept waiting and I talked to Mr. Waters again, and he told me to wait a few days more and they would put the fruit out, and Mrs. Eicholz came to me three times and told me, 'Don't do anything.' . . At that time I was paying rent to Mr. Waters. . . Mr. Waters is the one I had dealings with at the time I rented this property, and Mrs. Rose Eicholz did call to see me and told me to wait, that she would have the fruit store put out, and I waited and kept paying rent, and five, ten days passed, and she came back to the store and said, 'Don't do anything,' because I told her if she did not put the fruit out I would go to the law, and she said, ' Don't do anything. Mr. Abrahams is out of the city, and he is my lawyer, and he will be in town pretty soon.' " On cross-examination the plaintiff testified: "I . . have been in this country 28 years. I am an American citizen. I am able to read and write English a little, and I sign checks, read a newspaper every day. I have a typewriter and sometimes use it. I never read that paper. I can not understand so much, but I can read it. . . I signed the paper, that is my signature. I signed it in Mr. Waters' office. I went to his office. I never read the paper. Mr. Waters never told me, 'If you don't rent this place immediately from me, I am going to rent it as a fruit stand.' Mr. Waters telephoned me from his office or somewhere; it might have been some one else from his office. They said this is Mr. T. A. Waters' office. Certainly

Mr. Waters spoke to me about this. We were talking when we signed the papers." At the conclusion of the evidence the judge granted a nonsuit. The plaintiff excepted.

*Robert L. Colding* and *H. Mercer Jordan,* for plaintiff.

*Lawrence & Abrahams,* for defendants.