## CLARKE v. ORDER OF UNITED COMMER-CIAL TRAVELERS OF AMERICA.

No. 7811.

Circuit Court of Appeals, Fifth Circuit.
Oct. 26, 1935.

Winfield P. Jones, of Atlanta, Ga., for appellant.

Edgar A. Neely, of Atlanta, Ga., and E. W. Dillon, of Columbus, Ohio, for appellee.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

Appellant, Lucy F. Clarke, sued on a certificate of membership of her husband which insured her in a sum of $6,300 against his death if due solely to bodily injury through external, violent, and accidental means. The case was tried at law to a jury, and, on the conclusion of her evidence, the defendant moved for a nonsuit and the court directed a verdict for the defendant over the objections of the plaintiff that the case should go to the jury, but if not, a nonsuit rather than a verdict should be ordered.

■ A nonsuit in Georgia is the equivalent of the common-law demurrer to evidence, and raises only the question whether the plaintiff has proven the case alleged. Georgia Civil Code 1910, §§ 5573, 5942; Kelly v. Strouse & Brothers, 116 Ga. 872, at page 881, 43 S. E. 280. It is not conclusive, but permits a timely renewal of the suit. Sections 5625, 5942. A directed verdict, on the other hand, results in a conclusive adjudication, and may be had where there is no conflict in the evidence, and that introduced with all reasonable deductions or inferences therefrom demands a particular verdict. Section 5926. Such action is taken only after both sides have closed their evidence. Where the case depends upon issues of fact and the evidence of the plaintiff only has been heard, and it appears that he has failed to make out a prima facie case, it is held error to direct a verdict for the defendant on which a final judgment can be entered; but that the court should award a nonsuit. Hines v. McLellan, 117 Ga. 845, 45 S. E. 279; Exposition Cotton Mills v. W. & A. R. Co., 83 Ga. 441 (2), 10 S. E. 113.

Mrs. Clarke's amended pleadings briefly and generally alleged her husband's death solely through external, violent, and accidental means from injury due to a fall, and then more elaborately attacked the validity of a purported release which she had signed on receipt of $200. There were allegations tending to show surprise and misplaced confidence and mistake on her part which might have been of service to obtain a cancellation in equity, but there was no prayer invoking any equitable relief. Fraud invalidating the release in a court of law was asserted in that the company's representative, coming to her home at night, falsely represented to her that her husband's death did not result from the fall, but wholly from disease, as could be conclusively established by the testimony of his own physician; that the defendant owed her nothing, but was willing to give her as a gratuity $200, but could not pay more without forfeiting its license to do business; that it had the right to have her husband's body disinterred for an autopsy which would demonstrate a death from disease but which would horribly mutilate his body; that each statement was knowingly false and part of a plan to entrap her; and that in her horror and confusion she agreed to accept the gratuity and signed a paper which was not read to her, but which was represented to her to be a mere receipt for the gratuity. On learning the next morning that it was a release, she immediately informed the defendant's local secretary that she repudiated the transaction and wished to tender back the $200, but he said she would have to deal with the general officer who had settled with her and who had left town. She then became incapacitated for several months to perform any business, but afterwards employed an attorney to make tender of the $200 and to bring suit, all of which was done, and she offers to pay the $200 into court. To support these pleadings she gave testimony that her husband, seventy-seven years old and previously in good health, accidentally stumbled and fell on the floor upon his face and chest, and though there were no outward marks beyond slight bruises, he became ill and died in about two weeks. A physician who had never visited deceased gave an opinion that such a fall could, without precedent disease, kill a man of that age. She, however, introduced as part of her proof of loss a sworn statement of the attending physician that the fall might have produced some shock, but that cardiovascular and kidney disease was the cause of death. Touching the release, the evidence supported in general her allegations, with the important exceptions that there was no proof of the falsity of the representations made Mrs. Clarke, and especially no proof that the contents of the paper she signed were misrepresented or that any trick was resorted to to prevent her reading it or having her grown daughter, who was present, read it to her. She tried the next morning to give the check for the $200 back to the local secretary, but he said he had no authority, so she indorsed it and put it to her own credit in the bank and she has since kept that much to her credit there. Four months later, she having been ill meanwhile, she had her attorney offer the money back to the company before suing.

■ Assuming, without deciding, that the physician's surprising opinion that the fall alone might have produced death would carry the case to the jury on the point of death solely by accidental bodily injury, we think that Mrs. Clarke did not sustain her attack on the release as being void at law for fraud without cancellation in equity for accident or mistake. Her

566

dealings with the check look very much like a ratification, but if that be a question of intent for the jury, there is still a total failure to prove the falsity of any representation leading her to accept the $200, or any misstatement to her of the nature and contents of the paper which she signed or trick to prevent her having it read. In this respect she failed by her proof to sustain her allegations, and in order to succeed at law in nullifying the release for willful fraud she must have sustained them. Pacific Mutual Life Ins. Co. v. Webb (C. C. A.) 157 F. 155, 13 Ann. Cas. 752; Hodge v. Milam, 48 Ga. App. 105, 171 S. E. 870; Bateman v. Small & Tharpe, 24 Ga. App. 244, 100 S. E. 573, and cases cited. See, also, Eliopolo v. Eichholz, 161 Ga. 823, 131 S. E. 889, a case in equity. She presented no evidence sufficient for the jury to have made a favorable verdict, and the nonsuit moved for should have been granted. But a verdict under the authorities above cited should not have been directed. The Georgia practice touching the grant of a nonsuit instead of directing a verdict under such circumstances is binding on the federal courts under the Conformity Statute, 28 USCA § 724. Central Transportation Co. v. Pullman's Palace-Car Co., 139 U. S. 24, 11 S. Ct. 478, 35 L. Ed. 55; Coughran v. Bigelow, 164 U. S. 301, 17 S. Ct. 117, 41 L. Ed. 442; Barrett v. Virginian R. Co., 250 U. S. 473, 39 S. Ct. 540, 63 L. Ed. 1092. In accordance with the direction given in the last-cited case, the judgment here is reversed and the cause remanded with direction to set aside the verdict and judgment in favor of the defendant and to enter a judgment of nonsuit.